### HEARD v. McDONALD.
### HEARD v. McDONALD et al.

No. 24056 (two cases). Feb. 19, 1935.

Rehearing Denied May 7, 1935.

181

Billingsley & Stanley and Pryor & Wallace, for plaintiff in error.

Thos. J. Horsley, for defendants in error.

BAYLESS, J. H. O. McDonald, as plaintiff, instituted action No. 445 in the superior court of Seminole county, Okla., against J. H. Heard and Drew Harber, defendants, to recover from said defendants damages occasioned by injuries inflicted by Drew Harber, the employee of J. H. Heard, upon the person of Vernon McDonald, minor son of the plaintiff, and upon the property of the plaintiff. H. O. McDonald, as father and next friend of Vernon McDonald, a minor, instituted action No. 446 in the superior court of Seminole county, Okla., against J. H. Heard and Drew Harber to recover damages for the injuries inflicted upon said minor by Drew Harber, the employee of J. H. Heard. The jury returned a verdict in favor of H. O. McDonald in case No. 445 for $1,250, and in favor of Vernon McDonald in case No. 446 for the sum of $5,000. Drew Harber did not appeal from these judgments. J. H. Heard did appeal. The McDonalds will be referred to herein as plaintiffs and Heard and Harber by name. The two appeals were consolidated in this court.

Heard makes six assignments of error, but it is only necessary to notice the first assignment of error, which reads as follows:

"Error of the court in refusing to instruct the jury to return a verdict in favor of the defendant, J. H. Heard, at the conclusion of all the evidence in said cause."

The liability of Heard in this case was made to depend upon the rule of respondeat superior, he being the employer of Harber, and it being alleged that Harber was in the course of the performance of his duties at the time of the happening of the incident out of which the injuries arose. There is no dispute but that Harber was the employee of Heard at all the times mentioned herein, except the time at which this incident occurred, and it was Heard's defense that at that time Harber had abandoned his services and was engaged upon a separate and independent mission of his own.

The facts may be summarized thus:

Heard lived near Scullin, Murray county, Okla., and employed Harber to work on his farm at that place. Heard directed Harber to take a truck owned by Heard and to drive it to the home of Ed Gaines, located about seven or eight miles north and west of Sasakwa, Seminole county, Okla., to fetch a load of hay to Heard's home in Murray county. Harber was directed to make this trip in one day. Harber took with him his sister-in-law, who had been staying with his family for some weeks previously, for the purpose of delivering her at her home, somewhere near Ed Gaines'. He arrived at Ed Gaines' place before noon, but learned that the hay which he was to get was green and not yet baled, and he could not procure it until the next day. He thereupon left Ed Gaines' place and drove his sister-in-law to her home and returned to Ed Gaines' place. Later that afternoon, in company with a son of Ed Gaines, he drove to Sasakwa to attend church. He remained at this church for nearly an hour, and then left there and drove west on the Sasakwa-Konawa road, with the avowed purpose of turning north on the Wolf road to visit and spend the night with an uncle of his who lived north of Vamoosa, Seminole county, Okla., which place was some miles distant from Ed Gaines' home. While traveling on this Sasakwa-Konawa road at a point near where he intended to turn north, the truck which he was driving collided with the automobile owned by the father, and driven by the son, the plaintiffs herein.

We believe that the rule of law applicable to the facts herein, by which it is to be determined whether Harber was engaged in the master's business or was engaged upon a separate, independent mission of his own, is best stated in Carder v. Martin, 120 Okla. 179, 250 P. 906, as follows:

"It is true that decisions may be found in other jurisdictions holding that, where there has been a departure by the servant from the route marked out by the master, an accident occurring while the servant is returning to the place of departure will not be regarded as outside the scope of the master's business, since the servant, having accomplished his own purpose, will be regarded as within his line of duty while returning to the place from which he departed.

"We think, however, that the correct test to be applied is not so much whether the conduct of the servant was a departure or a mere deviation from his line of duty, but whether, taking into consideration the purpose of his mission and the distance traveled. it could be said that the servant was stepping aside, in some marked or un-

usual manner, for some purpose wholly disconnected with his employment."

When Harber arrived at Ed Gaines' home and learned that he could not procure the hay that day, he was faced with two alternatives: He could return to the home of Heard, his employer, and he would have yet been on Heard's business. He could have chosen to remain until the next day, which he did do, and, in pursuance of the exercise of this discretion, he would have undoubtedly had the privilege of seeking a safe place for the storage of the truck, and he would have been on his master's business. However, he went far beyond this. He went to Sasakwa, which was south and east of Gaines' place, to attend church. This was an entirely separate and independent mission of his own and in' no wise connected with the mission of his master. After he left the church, he was en route to pay a visit to an uncle of his who lived north and west of the home of Ed Gaines, to which place he had been sent by the master; and we can only conclude that this was a separate and independent mission of his own, in no wise connected with the mission of the master. He abandoned the master's mission when he left Ed Gaines' home to engage upon these separate, independent missions of his own. He was not the master's servant or agent, nor could the master be legally responsible for his acts, until he had returned to the place where he abandoned the master's mission.

The plaintiffs offer two argument, based upon certain facts in the case, to counteract this: They say: First, that at the time of the collision of the cars, Harber said that he was hurrying to his home to take care of his wife. These were declarations of an agent at the time of the incident, in the absence of the master, and if objected to by the master, would not have been competent. As to the master, however, they were not objected to, but even as evidence in the record they do not sustain the contentions made by the plaintiffs, but show that even then Harber had some other mission in mind than the mission of the master. Second, they say that in traveling as he did to church and from church to his uncle's place, he was traveling upon and using the same road he would have used in returning to Ed Gaines' place and to his master's home. This is entirely beside the point. These particular roads were not restricted to the use of the master, nor was there any inhibition against Harber using these roads for his own mission, if he so chose. We have heretofore held that he abandoned the master's mission when he left Ed Gaines' home, and the mere coincidence of the uses of this particular road is not a sufficient fact upon which to base the rule of respondeat superior in this case.

The trial court should have sustained Heard's motion for a directed verdict at the conclusion of the testimony, and, not having done so, it committed reversible error. The judgment of the trial court is therefore reversed and the cause is remanded to the trial court for further proceedings not inconsistent with the views expressed herein.

McNEILL, C. J., OSBORN, V. C. J., and WELCH and CORN, JJ., concur.