## DRAKE et al. v. SPECHT.

No. 22999. Dec. 17, 1935.

Rehearing Denied Jan. 7, 1936.

H. C. Thurman (Bryan A. Bowman, of counsel), for plaintiff in error.

O. A. Cargill and W. R. Graalman, for defendant in error.

PER CURIAM. The parties will be referred to as they appeared in the trial court.

This is an appeal from a judgment in favor of the plaintiff and against defendants for damages for personal injuries in the sum of $2,000, and damages to automobile in the sum of $750.

The plaintiff instituted this action on April 17, 1930, alleging that on April 4, 1930, at a point on the county highway six miles west of Edmond, Okla., there was a collision of cars, one driven by defendants' agent in a careless and negligent manner, the other driven by the plaintiff, and that the damage to plaintiff's car was $750 and the plaintiff suffered personal injuries in the sum of $20,000. The defendants denied the agency and denied generally the allegations of the petition.

On April 4, 1930, Francis Milner was engaged in the sandwich business, selling same south and east of Oklahoma City. He obtained the sandwiches from the defendants Drake's Sandwich Shop. He would deliver sandwiches to customers from whom he had taken orders the day before and take orders for the next day's delivery.

On April 3rd Francis Milner had an accident with his car and it was necessary for him to take the 4th of April off in order to adjust the damages to his car. So he borrowed a car from the defendants, and had his brother, Jim Milner, take the sandwich route and deliver his sandwiches. The arrangements for the route, as to where he should go, were made with his brother, Francis. The car was borrowed from the defendant by Francis. Francis Milner received 20 per cent. of the gross sales of the sandwiches. He would order sandwiches from the Drake shop and was not permitted to return any sandwiches which he had ordered, unless they had been delivered to a customer and the customer had failed to sell, in which event they might be picked up and returned to the sandwich shop and Milner get credit for 25 per cent. of the sale value. He had no customers north of Twenty-Third street in Oklahoma City.

On the morning of April 4th Jim Milner in the defendants' car delivered sandwiches for which orders had been taken, at Harrah, McLoud, Shawnee, Baptist University, Seminole, and Wewoka, and on his way back to Oklahoma City brought the mother of one of his friends in Shawnee to Oklahoma City, arriving shortly after noon. He took the lady on by the sandwich shop and from there went to Classen High School, Oklahoma City; he was a member of the Classen High School baseball team. At the school he picked up four high school boys as passengers and his baseball suit and proceeded north through Britton, to Crescent, Okla., to play baseball. Milner did not play in the game as he arrived after the game was started, but stayed there and held himself in readiness for the game in case he was needed.

Jim Milner did not take orders for sandwiches nor attempt to do so; did not sell, nor attempt to sell, any sandwiches on this trip to Crescent or on his return. The sandwiches were not discussed; in fact, he testified that he had no fresh sandwiches that he could sell; had some stale pick-ups in the car. On the way back to Oklahoma City after the game, between 5:30 and 6:00 o'clock, Jim Milner was driving the car south around a long curve to the east, ex-

pecting to go east, and met the car of the plaintiff coming from the east going west. At this juncture the accident occurred.

The defendants complain that there is no evidence proving or tending to prove that Jim Milner was an agent or employee of the defendants, and, further, if he was an employee, there is no evidence that he was acting in the scope of his employment in regard to his master's business.

That a better understanding of this case may be had, we deem it necessary to quote some of the evidence in this opinion. The material testimony of Jim Milner is as follows:

"Q. Now, had you worked for your brother before selling sandwiches? A. Yes, sir, several times. Q. Where would you ordinarily come back to in Oklahoma City, what point? A. When I got back, if I had some certain place I wanted to stop, or I would go straight on to the sandwich shop, whichever I wanted to. Q. Where would go finally report to your brother? A. Drake sandwich shop. Q. Where is that located in Oklahoma City? A. Between Twenty-third and Twenty-fourth on Shartel, on the east side of the street. Q. What would be your ordinary course in coming in from these towns to go to the sandwich shop? A. Straight in on Twenty-third and turn half a block. Q. On this day of this accident, how did you come in? A. I came on the highway all of the way and cross Classen on Twenty-third street to the 1500 block, to the block west of Classen where I let that lady out and turned around and come back to Classen school. The 1500 block is north of Classen school. Q. Came back to Classen school? A. I hadn't been there; I just come there. Q. What did you do there? A. I picked up four boys and we went to Crescent. Q. You went to the town of Crescent? A. Yes, sir. I went up and my baseball suit was there. I was supposed to play—I knew the day before I was supposed to play. That was the only reason I went up there, to get my baseball suit. Q. You went where? A. To school. Q. To Classen? A. Yes, sir. Q. To get your baseball suit? A. Yes, sir. Q. And you picked up the boys? A. Yes, sir. Q. Which way did you go from school? A. Went straight north to Twenty-third and over to Classen and stopped at Twenty-fourth and Classen, and then went straight out Classen to Forty-ninth street and slanted over to Western and straight on to Britton and out the road to Britton, and out some little highway, it wasn't the regular highway and we went on to Crescent that way. Q. Was that in the direction that your brother had any customers of the business? A. No, sir. Q. All of his customers and business—Mr. Cargill (interrupting): Just a

minute. That is leading and suggestive. Q. Which direction were all of his customers and business from Oklahoma City? A. East of town. Q. And which direction from Twenty-third street? A. What direction? Q. Yes, sir, north or south? A. On south of Twenty-third street. Q. Going to Crescent, as I understand, you went northwest and being all of the time north of Twenty-third street? A. Yes, sir. Q. Well, did you play in the ball game at Crescent? A. No, sir. I didn't get to play. It had already started. Q. Did you watch the game? A. Yes, sir, I was there ready to go in if they needed me."

The evidence tending to show that Jim Milner was a servant of the defendant is as follows (the plaintiff testifying as to conversation had with Mrs. Drake):

"Q. (By Mr. Cargill) State to the jury what she stated to you at that time, if it was concerning this automobile and the driver of the automobile and the accident. State to the jury what it was. Mr. Thurman: The same objection. The Court: Overruled and exception. Mr. Thurman: Objected to as incompetent, irrelevant and immaterial. Exception. A. She said he was working for her. Q. All right. A. That she didn't own the car; it wasn't her car. Q. She didn't own the car but he was working for her? A. Yes, sir. Q. What, if anything, was he doing, if she stated? A. I don't know just exactly what she did say about that, but that was the principal thing I wanted to find out. Q. You say that was long after this accident? A. Two or three weeks."

Plaintiff further testifies:

"Q. Did she say she knew which boy was driving the car? A. I don't know whether she did or not. Q. And what did she say? A. She said he was working for her. Q. At that time? A. At that time. Q. She didn't say he was working for her at the time of the accident? A. At the time of the accident, that is what I am talking about. Q. But she didn't say he was working for her at the time of the accident? A. Yes, sir, she did. Q. Are you sure about that? A. Yes, sir, I am sure about that. * * * Q. She didn't make any statement to you that the boy driving this car was on any errand or work for her at the time of the accident? A. She said he was working for her. Q. I say, she didn't say he was working for her or performing any work for her at the time of this accident? A. I didn't ask her. Q. She didn't say so? A. No, she didn't say so. * * *"

Leo O'Brien testifies:

"Q. You have said in answer to my question that the Milner boy, you, and John Drake were talking about Francis Milner and John Drake said Francis Milner was delivering

sandwiches in the scope of his employment with them? A. Jim Milner he was talking about. Q. He said to you in those words, that Jim Milner was delivering sandwiches in the scope of his employment with them? A. Yes, sir. Q. Did he say he was delivering sandwiches at Crescent, Oklahoma? A. We didn't ask him where he was delivering them at that time. Q. You don't know what he meant by where the sandwiches were delivered? A. He did because he knew what we were talking about. Q. He didn't say Jim Milner was delivering sandwiches at the time at Crescent, Okla., or in that direction? A. I inferred that because we were talking about on the way back from Oklahoma City. Q. You said what he said, Jim Milner was delivering sandwiches for them in the scope of his employment? A. No, sir, he. didn't say scope of his employment. Q. You said it three times. A. He said Jim Milner was delivering sandwiches for them that day. Q. Jim Milner was delivering sandwiches for him that day? A. Yes, sir. Q. He didn't say they were delivering for Francis that day? A. I didn't ask him at that time. I didn't know there was any other Milner interested."

These are extracts from the testimony upon which plaintiff relies to sustain the verdict and upon which plaintiff relies to prove that Jim Milner was an employee of the defendant, and at the time of the accident was acting in the scope of his employment and in regard to the defendant's business.

The burden is upon the plaintiff to prove that the driver of the car was acting in the scope of his employment and in regard to his master's business. We do not believe he has done this. There is no evidence that Jim Milner ever returned to Drake's sandwich shop on the 4th day of April, 1930. The evidence shows that when Jim Milner turned his car toward Classen High School he had quit work for the day, that his attention was not on the Drake sandwich shop, nor directed toward their business, but he was on a mission of his own. He wanted to play ball. He was not interested in selling, delivering or taking orders for sandwiches. He was a member of the Classen High School team; he went for his suit; he remembered the engagement to play ball at Crescent on that day; he picked up his friends and took them to Crescent.

The expression, "working for her at the time," is a broad term and is not proof that he was on an errand for the defendant at the time of the accident. Its use here was in the sense as shown in the case of DeCamp et al. v. Comerford, 134 Okla. 145, 272 P.

475, where similar language was used in a similar case and reads as follows:

"Evidence which plaintiff claims tended to prove that, at the time the accident occurred, Kohler was acting for DeCamp & Lancer, and within the scope of his employment, and therefore sufficient to have the question submitted to the jury, comes from the testimony of the mother and father of the plaintiff. Their testimony is to the effect that they went to see DeCamp, a member of this firm, and in his discussion of the wreck, the father asked him, DeCamp, if Chan Bradfield was the driver of the truck at the time of the accident, and DeCamp replied, 'Carl Kohler was driving for us then.' We cannot perceive how this can be construed as an admission of the fact that, at the particular time the accident occurred, Kohler was pursuing his duty as their employee. But it is apparent that by the answer DeCamp only meant to convey the idea that Kohler was then in their general employment of driving the truck. * * *

"For the reasons herein stated, the judgment of the trial court in favor of plaintiff and against the defendants, Oral DeCamp and Charles Lancer, individually and as a copartnership, is vacated and set aside, and the cause is remanded, with directions to the trial court to render judgment in their favor. As to the defendant, Carl Kohler, the judgment is affirmed."

We are of the opinion that the admission of Mrs. Drake, testified to by the plaintiff, is sufficient to take the case to the jury, in so far as it tends to prove that Jim Milner was an employee of the defendant, but from the record in this case and the testimony given, we cannot conceive that the Drakes meant more than to say in general terms that Milner was working for them and did not intend to say or admit that Jim Milner was "upon errand for the defendants in his business capacity at the time of the accident."

It might be well in this connection to mention the case of Hagler v. Breeze, Adm'x, 169 Okla. 37, 35 P. (2d) 892, in order to show the character of admission made by the defendant which will authorize submission to the jury. We quote from that opinion as follows:

"The evidence upon said question is conflicting. The only evidence showing that he was engaged upon a mission for his father was the testimony of the son of deceased, who testified that he met with defendant at the hospital shortly after the accident, and that defendant admitted at that time that the son was engaged upon an errand for de-

fendant in his business capacity at the time of said accident."

There is no such admission as this in the case at bar.

It is our opinion that the trial court erred in refusing to sustain a demurrer interposed by the defendant to the plaintiff's evidence, and in refusing and overruling the motion of the defendants for a directed verdict in their favor.

It is ordered that the case be remanded, with instructions to the trial court to set aside the verdict and judgment, sustain the demurrer to the evidence, and render judgment for the defendants.

The Supreme Court acknowledges the aid of Attorneys Archibald Bonds, L. A. Rowland, and S. N. Hawkes in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Bond and approved by Mr. Rowland and Mr. Hawkes the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS, WELCH, and CORN, JJ., concur.