RETAIL MERCHANTS ASS'N v. PETERMAN.

*99 P. 2d 130.*

No. 28908. Jan. 30, 1940.

Rehearing Denied Feb. 20, 1940.

Hudson & Hudson, of Tulsa, for plaintiff in error.

Ward, Justus & Ward, of Tulsa, for defendant in error.

WELCH, V. C. J. The litigation arose from an accident on the night of April 10, 1936, at about 9 p. m., in which plaintiff was struck while crossing the street by an automobile owned and driven by the defendant Burt Sutton. At that time said defendant was an employee of the codefendant, Retail Merchants Association and Associated Retail Credit Men of Tulsa, Okla., and was operating his own automobile for his employer.

By agreement of parties a jury was waived. At the conclusion of plaintiff's case in chief, the defendants elected to stand upon their respective demurrers, which were overruled by the trial court. Judgment was rendered for the plaintiff.

The only question before this court is, whether there was any evidence to support the judgment of the trial court in finding that at the time of this accident Sutton was acting within the scope of his authority as the agent, servant, and employee of his codefendant, Retail Merchants Association.

The record reveals that the defendant Sutton was employed by the defendant Retail Merchants Association on a salary and commission basis; that his duties were to collect accounts from individuals in the district in and around Tulsa. He also was to receive a certain mileage expense from the corporation. It is agreed that as a general customary practice, when he was out of Tulsa and drove in after office hours, he drove by the office for the purpose of checking his mileage. It is clearly shown that the defendant Sutton used his own car in his employment, and that he kept the car at his home and had full control over it at all times.

It further clearly appears that upon the instant occasion the defendant Sutton had agreed with his son to come by for him after the day's work. He had been working in the city of Pawhuska and started home about 6 or 7 o'clock p. m., from Pawhuska. His home was in Sand Springs, and it was necessary for him to go through Tulsa to reach his home in Sand Springs, and in order to pick up his son, who was at a friend's house. His testimony revealed that in coming into Tulsa he came over Peoria street, but deviated about one mile east of Peoria to 2413 East Fourth street to pick up his son, and after getting his son the accident herein complained of happened at Third and Utica streets. He had some of the collection files belonging to the corporation with him when the accident occurred. It appears from the record in this case that the defendant Sutton had authority in the nature of his employment to use his own discretion as to where he drove his car and what streets and routes he followed.

The above facts were clearly revealed by the testimony. The law is established in this state that the employer is not liable for damages caused by a driver of an automobile where it is alleged the relation of master and servant existed, unless it is first established the relation of master and servant actually existed and the driver of the car was at the time in the performance of his duties as servant. Crowe v. Peters, 171 Okla. 433, 43 P. 2d 93.

However, where an appeal is prosecuted from the judgment of the trial court in a jury case tried to the court without a jury, we are not required to examine and weigh the evidence, but only examine the evidence for the purpose of determining whether or not, as a matter of law, there is any competent evidence in the record reasonably supporting the findings and judgment of the trial court. Simmons et al. v. Maxey, 106 Okla. 252, 233 P. 669.

In general terms it may be said that an act is within the course of employment if (1) it be something fairly and naturally incident to the business, and if (2) it be done while the servant was employed upon the master's business, and be done, although mistakenly or ill-advisedly, with a view to further the master's business, or from some impulse of emotion which naturally grew out of or was incident to the attempt to perform the master's business, and did not arise wholly from some external, independent, and personal motive on the part of the servant to do the act upon his own account. Ada-Konawa Bridge Co. v. Cargo, 163 Okla. 122, 21 P. 2d 1, and Mechem on Agency, § 1960.

The only competent testimony before the court as to the question of Sutton's agency at the time of the accident was the testimony of the witness Sutton, and, according to his testimony, the only purpose he had in mind for deviating from Peoria street and traveling one mile east was to go after his son. We fail to see where it would be to the advantage of his employer for him to go to 2413 East Fourth street after his son. This was a mission all of his own, he had agreed with his son to drive by for him on his way home; he testified he was on his way home. For us to hold that this was something fairly and naturally incident to the business, or that it was done to further the master's interest, would be exhausting the elasticity of the rule of respondeat superior beyond the bounds of justice.

After having carefully examined the record in the case at bar, we fail to find any evidence to support the judgment of the trial court as against the defendant Retail Merchants Association and Associated Retail Credit Men of Tulsa, Okla., a corporation. DeCamp et al. v. Comerford, 134 Okla. 145, 272 P. 475; Drake v. Specht, 175 Okla. 414, 53 P. 2d 235; Carder v. Martin, 120 Okla. 179, 250 P. 906.

We have held that the correct test to be applied is not so much whether the conduct of the servant was a departure or a mere deviation from his line of duty, but whether, taking into consideration the purpose of this mission and the distance traveled, it could be said that the servant was stepping aside in some marked or unusual manner for some

purpose wholly disconnected with his employment. Heard v. McDonald, 172 Okla. 180, 43 P. 2d 1026.

We are of the opinion that the evidence clearly shows that Sutton abandoned the master's mission when he left Peoria street to go one mile east after his son while on his way home, and the mere fact that he had some of the files of his employer, and had not gone by the office to check the mileage on his car, is insufficient to bring the employer within the rule of respondeat superior.

Assuming, but not deciding, that this relationship, and the car use shown, would make the employer liable, while the driver with the car was on business for the company, still the facts bring this case clearly within the nonliability rule of the cases herein cited.

The trial court should have sustained the demurrer of the defendant Retail Merchants Association at the conclusion of the testimony of the plaintiff, and not having done so, it committed reversible error. The judgment of the trial court is therefore, reversed, and the cause is remanded to the trial court, with directions to vacate the judgment.

BAYLESS, C. J., and OSBORN, CORN, GIBSON, and DANNER, JJ., concur. RILEY, HURST, and DAVISON, JJ., dissent.

---

HURST, J. (dissenting). I am of the opinion that the question here was one of fact for the trial court to determine, a jury having been waived, and that the decision in the case of Lee v. Pierce (1925) 112 Okla. 212, 239 P. 989, relied on by the plaintiff but not mentioned in the majority opinion, should be controlling. In both cases the deviation and accident occurred while the servant was still approaching, but had not reached, his destination. The deviation in the Lee Case was four blocks on a trip of nine blocks, while here the deviation was but one mile on a trip of at least 50 miles. If, as it was held, the extent of the deviation in the Lee Case was one of fact, how can it be said it is one of law for this court in the instant case? I think it is not of controlling importance that the reason for the deviation was not shown in the Lee Case. In making the deviation in the instant case, the servant was on a double mission; he was on his own mission in going for his son, and he was at the same time still approaching his destination, and had not abandoned his master's business. In the Lee Case this court quoted with approval from a New York case and an Arkansas case rules that are applicable here. It also cites with approval the leading case of Ritchie v. Waller (1893) 63 Conn. 155, 28 Atl. 29, 27 L. R. A. 165, 38 Am. St. Rep. 361, which reviews the authorities, both American and English, on the law of deviation in the case of boats and horse-drawn vehicles (it was before the advent of the automobile), and then sums up the matter as follows:

"Whether, then, the act of a servant, for which it is sought in a particular case to hold the master responsible, was done in the execution of the master's business within the scope of the employment, or not, must, from the nature of things, in most cases be a question of fact, to be determined as such by the jury or other trier, because no general rule of law has been, or probably can be, laid down, the application of which will determine the matter in all cases. Sometimes, however, this question is determined by the court as a matter of law. But in by far the greater number of cases where the question of the master's responsibility turns, as in the present case, principally upon the mere extent of deviation by the servant from the strict course of his employment or duty, it has been generally held to be one of fact and not of law. In such cases it is, and must usually remain, a question dependent upon the degree of deviation and all the attendant circumstances. In cases where the deviation is slight and not unusual, the court may and often will, as a matter of law, determine that the servant was still executing his master's business. So, too, where the deviation is very marked and unusual, the court in like manner may determine that the servant was not on the master's business at all, but on his own. Cases falling between these extremes will be regarded as involving

merely a question of fact, to be left to the jury or other trier of such questions."

In Pollock on Torts (9th Ed.) p. 88, the rule governing the law of deviation is stated thus:

"Not every deviation of the servant from the strict execution of duty, nor every disregard of particular instructions, will be such an interruption of the course of employment as to determine or suspend the master's responsibility. But where there is not merely deviation, but a total departure from the course of the master's business, so that the servant may be said to be 'on a frolic of his own,' the master is no longer answerable for the servant's conduct."

While there may be found cases on all sides of the question, the weight of authority supports the foregoing principles. Cooley on Torts (2d Ed.) p. 63; Berry, Law of Automobiles (7th Ed.) § 4369; Blashfield, Encyclopedia of Automobile Law, 3030; 39 C. J. 1297; 18 R.C.L. 795; 5 Am. Jur. 714; 22 A.L.R. 1404; 45 A.L.R. 482; 68 A.L.R. 1055; 80 A.L.R. 727. See, also, P. & S. Taxi & Baggage Co. v. Cameron (1938) 183 Okla. 226, 80 P. 2d 618.

The authorities relied on by the majority do not, in my opinion, fit the facts in this case or justify a reversal. In the Heard Case (172 Okla. 180, 43 P. 2d 1026), after reaching his destination, the servant went on an independent mission of his own to attend church. In the De Camp Case (134 Okla. 143, 272 P. 475) the servant, on reaching a point one block west of his destination, went beyond his destination, and in an opposite direction therefrom, on an independent mission of his own to see a young lady friend. In the Drake Case (175 Okla. 414, 53 P. 2d 255) the servant returned to Oklahoma City, and instead of going to his destination in the city, turned north and west a distance of many miles to another town to attend a basketball game. In the Carder Case (120 Okla. 179, 250 P. 906) the servant went a distance of ten miles out of his way to another town, on a mission purely his own to see a young lady friend. Thus it is seen that in none of these cases, except possibly in the Carder Case, was the servant still going on his way to his destination as in the instant case. The Carder Case involved more than a mere deviation, but it involved a marked and unusual departure to another town. The facts in all these cases are such that the only reasonable conclusion that could probably be drawn was that each constituted a complete departure from, and an abandonment of, the master's business. In such cases the question becomes one of law for the court.

I am convinced that the majority opinion, if it stands, will bring more confusion into this difficult question, and it will be construed as a departure from the general rule that has heretofore obtained in this state. It in effect holds that a slight deviation will as a matter of law relieve the master from liability.

I am therefore of the opinion that it was for the trial court as the trier of the facts to determine whether the servant was at the time of the accident acting within the general scope of his employment, and I respectfully dissent to the opinion of the majority.

Mr. Justice RILEY concurs in this dissent.