**Barbara Ann BARNES, Appellee and Cross-Appellant,**

v.

**Thomas Lee GAINES, Appellant and Cross-Appellee,**

**Barbara Ann BARNES, Appellee and Cross-Appellant,**

v.

**Helen P. SHEEHAN and the First National Bank and Trust Company of Tulsa, as Guardian of the Estate of Helen P. Sheehan, Appellants and Cross-Appellees.**

No. 54112.

Court of Appeals of Oklahoma, Division No. 3.

March 15, 1983.

Rehearing Denied May 3, 1983.

Certiorari Denied June 20, 1983.

Released for Publication by Order of Court of Appeals July 21, 1983.

**1176**

Appeal from the District Court in Tulsa County, B.R. Beasley, Trial Judge.

Deryl L. Gotcher, Graydon Dean Luthey, Jr., Tulsa, for appellant Thomas Lee Gaines.

Joseph A. Sharp, Michael P. Atkinson, Tulsa, for appellee/cross appellant Barbara Ann Barnes.

J. Warren Jackman, J. David Jorgenson, Tulsa, for appellants/cross-appellees Helen P. Sheehan and The First Nat. Bank and Trust Co. of Tulsa.

HUNTER, Judge:

This is an action brought by Barbara Barnes, as plaintiff, against Thomas Gaines, Helen Sheehan, and The First National Bank and Trust Company of Tulsa, Oklahoma, Guardian of the Estate of Helen Sheehan, as defendants, arising out of an automobile accident which occurred on March 3, 1978 in Tulsa, Oklahoma.

A jury trial resulted in a verdict against all defendants in the sum of $105,581.18 actual damages and $30,000 punitive damages. The trial court ordered a remittitur of the $30,000 punitive damages award against defendants Helen Sheehan and the Bank.

On November 12, 1976 the District Court of Tulsa County, Oklahoma found Helen Sheehan, an elderly widow who had earlier suffered a stroke, to be "... mentally incompetent because of advanced age and deterioration of faculties to manage her property and properly to care for herself ..." and appointed the First National Bank and Trust Company of Tulsa, Oklaho-

ma as guardian of her estate. Mary Jane Nance was appointed guardian of the person of Helen Sheehan by the same order.

Ruth Johnson, a licensed practical nurse, had been working as a nurse-companion for Helen since prior to the appointment of the guardians and arrangements were made to keep her on in that capacity. Ruth lived with Helen, was paid from Helen's trust and reported to Dee McDugle, a trust officer at the bank.

On March 3, 1978 Helen Sheehan and Ruth Johnson were in the process of moving from an apartment to a rented house. Professional movers had been hired to move the heavy furniture and larger objects but Helen and Ruth were going to move the smaller valuable items, such as china, crystal, linens, etc., by automobile. The automobile was a 1977 Chrysler Cordoba titled in the name of the Bank as guardian of the estate of Helen Sheehan. The automobile was paid for from Helen's funds, with approval of the probate judge, and was furnished for her use. Ruth Johnson was the primary driver of the automobile.

Thomas Gaines, who was the son of one of Mrs. Sheehan's prior nurses and who had previously been married to Ruth Johnson, appeared at the apartment on the day in question, and volunteered to assist in the moving. Helen was concerned that some of the items might be too heavy for Thomas to lift by himself and Thomas then suggested that he could get a friend to help him. Thomas, was an alcoholic, supposedly dry. He was going to pick up his friend at the Rebos Club or the 1014 Club. These are both places for members of Alcoholics Anonymous to gather and drink soft drinks.

With the assent of Ruth Johnson and Helen Sheehan, Thomas Gaines took the Chrysler Cordoba automobile to go look for his friend. He was expected to return shortly. When Thomas found his friend they decided, instead of returning to the apartment, to go and have a drink of alcoholic beverage. They had several drinks, including a pint they bought, and Thomas drove out north of Tulsa some distance. Thomas became so drunk he experienced a period of black-out, during which he had no recollection.

On the way back from north Tulsa, Thomas was admittedly driving approximately 70 miles per hour in a 35 mile per hour zone when he crossed the center line and struck the automobile being driven by Barbara Barnes, causing her to sustain injuries.

Barbara Barnes brought this action against Thomas Gaines, Helen Sheehan, The Bank as guardian of Helen's estate and the Bank in its individual capacity, on the theories of negligence, agency and, in the alternative, negligent entrustment. She did not join Mary Jane Nance, the guardian of the person of Helen Sheehan, nor did she join Ruth Johnson.

At the trial Thomas Gaines admitted to being drunk and speeding. Thomas had filed a motion *in limine* requesting the trial judge to instruct the plaintiff not to present evidence that shortly after the accident, during the time the police were investigating, Thomas stole the police car and left the scene. The court overruled the motion *in limine* and, when the evidence was presented at trial, overruled Thomas's objection to that evidence and admitted it.

The trial judge refused to allow the jury to consider the negligent entrustment theory, ruling that there was no evidence to warrant an instruction on that issue. The Bank's demurrer to the evidence was sustained and the Bank, in its individual capacity, was dismissed from the suit.

Helen Sheehan's demurrer was overruled and, at the close of the evidence, the matter was submitted to the jury. The jury found Thomas Gaines to be 100% negligent and awarded damages as above stated.

Thomas Gaines filed his appeal urging that the overruling of his motion *in limine* and allowing the introduction of evidence that he stole the police car, over his objection, was substantial prejudicial error requiring reversal and/or the court should have ordered a remittitur and failure to do so requires reversal.

Helen Sheehan filed her appeal raising several propositions of error. First, error in overruling her demurrer and motion for directed verdict on the basis that the evidence established, as a matter of law, that Thomas Gaines was on a "frolic of his own" at the time of the occurrence; second, error in failing to sustain her motion for judgment notwithstanding the verdict, on the same basis; third, error in admitting incompetent, immaterial and prejudicial evidence and argument over her objection; fourth, error in giving instructions number 8 and 13; and fifth, error in denying the motion for judgment notwithstanding the verdict on the additional ground that an adjudicated incompetent person has no capacity to appoint an agent.

Barbara Barnes, the plaintiff, filed her cross-appeal presenting three propositions of error: first, error in sustaining the demurrer of the Bank; second, error in vacating the award of punitive damages against Helen Sheehan and the Bank as her guardian; and third, error in refusing to submit the negligent entrustment theory to the jury.

## I.

■ We will first address the contentions of Defendant Gaines. Generally the admission or exclusion of evidence rests in the sound discretion of the trial judge and, in the absence of prejudice to the complaining party, erroneous rulings will not require a reversal.

Title 12 O.S. 1981 § 2104 provides:

A. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of a party is affected, and;

1. If the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context;

■ Timely objection was made to the introduction of the evidence concerning defendant Gaines stealing the police car after the accident occurred. Although this evidence may have been relevant to the issue of punitive damages, it cannot be said that it was relevant to the issues of his negligence or the plaintiff's damages or any other fact of consequence to the determination of the primary action between the parties. We, therefore, hold that the admission of evidence of the crime of stealing the police car after the accident, over timely objection, was error because it substantially affected the right of defendant Gaines to a fair trial on the primary issues before the jury. The probative value of the evidence was substantially outweighed by the danger of unfair prejudice and, in this case, was a needless presentation of cumulative evidence on the question of punitive damages. *See* 12 O.S. 1981 §§ 2401, 2402, 2403.

The judgment against defendant Thomas Gaines is REVERSED AND REMANDED for a new trial.

## II.

We next consider the contentions of the defendant Helen Sheehan. Her first two assignments of error, relating to the question of whether the defendant Gaines was "on a frolic of his own" as a matter of law, will be discussed together.

■ The question presented on a motion to direct a verdict is whether, admitting the truth of all the evidence in favor of the party against whom the action is contemplated, together with such inferences and conclusions as may be reasonably drawn from it, there is enough competent evidence to reasonably sustain a verdict in favor of such party. *Phillips Petroleum Co. v. Ward,* 181 Okl. 462, 74 P.2d 614 (1937).

It is to be noted that the agency of the defendant Gaines, if in fact such agency existed, was general and not special; that he was given no fixed route of travel; that the defendant Sheehan exercised no apparent control over his movements.

■ Whether there has been a deviation so material or substantial as to constitute a complete departure is usually a question of fact. In some cases the deviation may be so

marked, and in others so slight relatively, that the court can say that no conclusion other than that the act was or was not a departure could reasonably be supported; while in still others the deviation may be so uncertain in extent and degree in view of the facts and circumstances as to make the question of what inferences should be drawn from the evidence properly one for the jury. *Phillips Petroleum Co. v. Ward, supra.*

We are aware of the Oklahoma cases which hold that when the question of whether or not a servant was acting within the scope of his employment at the time of an injury to a third person occasioned by his negligence and the evidence on the question is conflicting or such that conflicting inferences may be drawn therefrom and a conclusion adverse to the party presenting a motion for directed verdict rendered, the motion should be overruled and the issue submitted to the jury. *See Fore v. McMillian,* 272 P.2d 1036 (Okl.1954), and cases cited therein.

We believe that the rule of law applicable to the facts herein, by which it is to be determined whether Gaines was engaged in the master's business or was engaged upon a separate independent mission of his own, is best stated in *Carder v. Martin,* 120 Okl. 179, 250 P. 906, 907 (1926), as follows:

It is true that decisions may be found in other jurisdictions holding that, where there has been a departure by the servant from the route marked out by the master, an accident occurring while the servant is returning to the place of departure will not be regarded as outside the scope of the master's business, since the servant, having accomplished his own purpose, will be regarded as within his line of duty while returning to the place from which he departed.

We think, however, that the correct test to be applied is, not so much whether the conduct of the servant was a departure or a mere deviation from his line of duty, but whether, taking into consideration the purpose of his mission, and the distance traveled, it could be said that the servant was stepping aside, in some marked or unusual manner, for some purpose wholly disconnected with his employment.

*See also, Heard v. McDonald,* 172 Okl. 180, 43 P.2d 1026 (1935).

When Gaines picked up his friend at the 1014 Club he immediately embarked on an entirely separate and independent mission of his own and in nowise connected with the mission of his master. He abandoned the master's mission when he left the 1014 Club to engage upon his separate independent mission of obtaining alcoholic beverages and drinking them. He was not the master's servant or agent, nor could the master be legally responsible for his acts, until he had returned to the place where he abandoned the master's mission.

The trial court should have sustained Sheehan's motion for a directed verdict at the conclusion of the testimony, and not having done so, it committed reversible error.

### III.

Defendant Sheehan's fifth proposition of error, that an adjudicated incompetent person has no capacity to appoint an agent, is also well taken.

Title 15 O.S. 1981 § 24 provides:

After his incapacity has been judicially determined, a person of unsound mind can make no conveyance or other contract, nor designate any power, nor waive any right, until his restoration to capacity is judicially determined. But if actually restored to capacity, he may make a will, though his restoration is not thus determined.

This section has been applied in several cases. In *Fixico v. Fixico,* 186 Okl. 656, 100 P.2d 260, (Okl.1940), the statute was held to preclude enforceability of a purported contract entered into by one judicially declared an incompetent, although such contract had been acquiesced in by the guardian and the county court.

The plain wording and intent of § 24 *supra,* is to preclude the incompetent from

entering any contract, designating any power or waiving any right.

Section 24, *supra,* declares further that the ward cannot act until his restoration to capacity has been accomplished by a judicial determination. Thus, under statutes dealing with guardians and wards, the ward has no capacity to perform such an act as designating an agent, or hiring a servant and any attempt to do so is void.

Title 15 O.S. 1981 § 25 provides:

A minor, or a person of unsound mind, of whatever degree is civilly liable for a wrong done by him, in like manner as any other person.

■ Decisions under § 25, *supra,* holding incompetents civilly liable for wrongs committed by them, have been limited to those fact situations where the incompetent committed the act personally, or it was committed by his agent, servant or employee in his presence or at his direction. The general rule is that he is not liable for the negligent act of a person employed by his guardian where such act was not committed at his direction or in his presence. *Gillet v. Shaw,* 117 Md. 508, 83 A. 394 (1912); ANNOTATION: 40 A.L.R.2d 1104.

This was not a case of the owner of an automobile becoming a passenger, thereby having the right, and duty, to prevent the driver from driving in a reckless or dangerous manner or in violation of law. There was no opportunity to restrain the driver for which failure to do so would render her responsible for the consequences, as was the case in *Ellis v. Fixico,* 174 Okl. 116, 50 P.2d 162 (1935).

■ Our attention has not been directed to any Oklahoma case directly in point nor have we been able to discover any. A closely analagous case is that of *Wagnon v. Carter,* 539 P.2d 735 (Okl.1975) where the Supreme Court held that since a minor did not have the capacity to appoint an agent, he could not be held liable on the theory that a person he allowed to drive his father's car was his agent and the driver's negligence could be imputed to him. Applying the same reasoning in the application

of 15 O.S. § 24 to the facts of this case, we hold that where the beneficial owner of an automobile was an adjucated incompetent without capacity to appoint an agent when the automobile accident occurred, she cannot be held liable on the theory that the person she allowed to drive was her agent and that the negligence of such agent can be imputed to her.

IV.

Defendant Sheehan objected to instruction number 8 before it was given and again during plaintiff's closing argument. Plaintiff's counsel, during closing argument, utilized instruction number 8 to argue his negligent entrustment theory to the jury in spite of the fact that the trial judge had ruled that that theory was not sustained by the evidence and was not to be submitted to the jury. Instruction number 8 read as follows:

You are instructed that Ruth E. Johnson is known in law as the "agent, servant or employee" of the defendants Helen P. Sheehan and the First National Bank and Trust Company of Tulsa as Guardian of the Estate of Helen P. Sheehan. Because of this relationship, the defendant Sheehan and her legal Guardian are bound by and become liable for acts and omissions, if any, if you find from a preponderance of the evidence, that such acts or omissions, if any, operated to become the proximate cause of plaintiff's claimed injuries and damages herein.

This was an improper instruction, not supported by the evidence, and could only be used if there was evidence to support the negligent entrustment theory as well as evidence to support the theory that Ruth Johnson was an agent, servant or employee of the guardian.

The broad standard governing the limitations on counsel in argument is stated in *Atchison, Topeka & Santa Fe Rwy. Co. v. Coulson,* 371 P.2d 914, (Okl.1962) where the Supreme Court stated in the Syllabus as follows:

The argument of counsel to the jury should at all times be confined to the

questions in issue and the evidence relating thereto adduced at the trial, and such inferences, deductions, and analogies as can reasonably and properly be drawn therefrom.

In *Roberts v. Lewis,* 441 P.2d 350, (Okl. 1968), the Court said:

1. Great latitude is allowed counsel in discussing facts and issues, and counsel may show environments of case, comment upon bias or interests of parties and witnesses, discuss reasonableness or unreasonableness of evidence and its probative effect or lack of probative effect, but such latitude extends only to facts and issues raised by the evidence.

2. If counsel, in argument, goes outside of the record, or indulges in inflammatory language to influence the jury to return a verdict favorable to his clients, or if he makes respresentations of fact to the jury, unsupported by any evidence, and calculated to injure the opposing side, and such argument is not in retaliation for other improper argument by opposing counsel, this constitutes "misconduct", and requires a reversal unless it clearly appears that no injury resulted to the other side.

At page 355, in *Roberts, supra,* the Court said:

Where matters of a highly prejudicial nature have been brought before the jury, even when not manifestly motivated by bad faith, we have regarded such procedure as reversible error unless it can be affirmatively ascertained from the record that no harm resulted therefrom. See the discussion in *Pratt v. Womack,* Okl. 359 P.2d 223, 227, 228, and *Green Construction Co. v. Lampe,* 174 Okl. 351, 50 P.2d 286, See also *Horany v. Paris,* Okl., 369 P.2d 636, 637, quoting *People v. Ah Len,* 92 Cal. 282, 28 P. 286, 287, 27 Am.St. Rep. 103.

Plaintiff's counsel, during his closing argument, told the jury:

Now, the Court, you can refer back to his instruction on proximate cause, but it means: The thing that cause the accident. *Using your good common sense,*

the thing that caused the accident was the intention (sic) and the want of care of the defendant Sheehan and the defendant bank, *in allowing and permitting Thomas Gaines to get behind the wheel of that car.* Now, the court has let in plaintiff's exhibit 26. You want to look at the speeding violations and please do when you get back in the jury room. *Do any of you think that is the kind of driver . . .* [Emphasis added.]

At that point defendant Sheehan's counsel interposed an objection to the argument relating to the theory of negligent entrustment.

The trial judge said:

I understand that. I would sustain the objection to this regard: That previous convictions could not be used to determine negligence in this case.

Plaintiff's counsel continued:

Well, for whatever it is worth, you may so consider it, because you are the trier of facts. Now, let's take two or three other little facts. Gosh, I don't want to miss anything, but *Ruth Johnson knew about this one, like she said first, but two prior speeding violations.* And, then . . . . [Emphasis added].

Defense counsel again objected and the court sustained the objection but did not admonish the jury.

Plaintiff's counsel continued:

. . . Under the testimony that Judge Beasley has let in, *Gaines was convicted of public drunk ten days before this accident happened. And, what's the producing cause of this terrible kind of injury?* [Emphasis added].

Defense counsel again objected and the court overruled the objection. Plaintiff's counsel continued:

*They know what it is. It is letting Tom Gaines behind that wheel by the one who had a long, intimate knowledge of what kind of a person he was, and what kind of a driver he was.* And, you can be the judge of her credibility and figure out what or whether the Plaintiff is entitled to recover against the defendant Sheehan

and the defendant Bank. [Emphasis added].

Whereupon defense counsel objected and asked for permission to make a record. Out of the hearing of the jury, defense counsel moved for a mistrial and pointed out to the court that plaintiff's counsel was continuing to argue negligent entrustment even after the court had sustained his objections to such argument. The court did say, during the colloquy between attorneys, to plaintiff's counsel, "But, you do need to stay off negligent entrustment." After further argument defense counsel requested the judge to remove instruction 8 from those given to the jury and to instruct the jury to disregard it. The court overruled the motion for mistrial and the motion to remove instruction 8 from the jury's consideration. Upon resumption of plaintiff's counsel's closing argument he stated:

> Oh yes. *It's letting Thomas Gaines behind the wheel by Ruth Johnson. The totality of the knowledge that was available to her about Gaines* ... [Emphasis added].

Once again defense counsel objected and the court sustained the objection and admonished the jury as follows:

> One theory that the Court has made a legal determination on was negligent entrustment, and that is not submitted to you, Ladies and Gentlemen. There is a theory of agency that is submitted to you against the Defendant Sheehan, and you can determine that issue.

Plaintiff's counsel continued:

> All right sir. However, Ladies and Gentlemen, you'll be able to take these instructions with you and read them together. And, I *direct your attention to instruction number eight.* When you get back in the jury room, you'll have an opportunity to read it at your pleasure, and *you can interpret it and apply the facts to it.* Where .... They designated Ruth Johnson would be the driver of this particular car. *And, in part, just insofar as it is covered by instruction number eight, it is her actions that we complain of. We say that they were not*

*prudent, that they were not the actions of a person who would use all reasonable means necessary to satisfy themselves that that was the kind of driver that they'd want to have behind the wheel.* [Emphasis added].

Defense counsel: I object again.

The Court: I'll sustain the objection.

Defense counsel: May I approach the bench again?

The Court: I'll admonish the jury to disregard it.

During the final portion of Plaintiff's counsel's closing argument he once again argued the negligent entrustment theory:

> ... *It is not fair to ignore the facts of who owned the car and who had the ability to control who was in it.* The reason these defendants are here, ... is because *they are legally responsible in money damages for the acts of their*—for the negligence of their acts, ... What is a judgment against Gaines worth? He told you: Nothing. But, that's not a sufficient reason for her to have a judgment against these defendants. *There must be actionable negligence, and who did they turn the car over to? A friend, a child? An alcoholic, with a public drunk conviction ten days old.* [Emphasis added].

Defense counsel objected again and plaintiff's counsel responded:

> We're going on the negligence of Sheehan and the negligence of the bank as the court has covered in this instruction.

The Court: I'll note your objection. I think I've obviously made a ruling on it.

At the close of the argument defense counsel again requested the court to remove instruction number 8 from the printed instructions and admonish the jury to disregard it or, in the alternative to grant a mistrial. The court overruled this request.

██ On at least four different occasions, the trial judge either sustained an objection by defense counsel to a remark by plaintiff's counsel, or, in a mild way, asked the jury not to consider them and, in effect

recognized them as improper. The Oklahoma Supreme Court has recognized that their refusing to reverse because of their inability to predict that a new trial would result in a different, or smaller, verdict, permits a plaintiff to deliberately inject into a case beneficial prejudice which experience has demonstrated will usually be reflected in a larger recovery. Where plaintiff, or his counsel acting for him, has done this, by inflammatory language, or representations of fact unsupported by evidence, and calculated to injure his adversary, and unprovoked by improper conduct on the part of the latter, or opposing counsel, this is "misconduct" as defined in *Roberts, supra,* and can be rectified by this court, unless it clearly appears that such conduct did not have its usual prejudicial effect. It is our opinion that the remarks by plaintiff's attorney, herein referred to, constitute "misconduct" under the circumstances of this case. We therefore conclude that the verdict in this case is excessive, and falls into the same category as those obviously resulting from passion and prejudice.

For all of the above reasons, the judgment against the defendant Sheehan and the Bank as her guardian is REVERSED.

## V.

 We now direct our discussion to the allegations of error presented by appellee, Barbara Ann Barnes, on her cross-appeal. Appellee's first proposition is that the court erred in not submitting the negligent entrustment theory to the jury. She alleges that the evidence that defendants Sheehan and the Bank and their employee, Ruth Johnson, knew of defendant Gaines alcoholism and his propensity to receive traffic citations was sufficient to raise a question for the jury. This proposition is not supported by the record. Taken in its best light for Appellee, the evidence merely established that defendant Sheehan knew Gaines was an alcoholic. She may have known about Gaines receiving one speeding ticket. She believed that he was dry and had been for at least 90 days. There was no evidence that Gaines had ever received

an alcohol related traffic citation. Since we have held that Ruth Johnson was not an agent, servant or employee of either defendant Sheehan or the Bank, her knowledge could not be imputed to them. In any event, there was no evidence that Ruth Johnson knew anything more than that Gaines was an alcoholic, supposedly dry, and that he had had some speeding tickets in the past.

The trial courts ruling that there was no evidence on which to allow the negligent entrustment theory to go to the jury was correct and appellee's first proposition is without merit.

## VI.

 Appellee's second contention is that the court erred in sustaining the demurrer of the bank in its individual capacity. She argues that Ruth Johnson was employed by the Bank and that defendant Gaines was, therefore, a sub-agent of the Bank and the Bank would be liable for the negligence of its agent. She relies on *Fisher v. McNeeley,* 110 Wash. 283, 188 P.2d 478 (1920) and *In re Lathers Will,* 137 Misc. 222, 243 N.Y.S. 366 (N.Y.1930).

The evidence in this case does not support appellee's contention that Ruth Johnson was an agent, servant or employee of the Bank. The Bank was the guardian of the *estate* of Helen Sheehan. The guardian of the estate of an incompetent person is charged with the responsibility of managing the property of his ward. The guardian of the person is charged with the responsibility of the custody, support, health and education of the ward and may fix the residence of the ward. *See,* 30 O.S. 1981 §§ 15, 16. Ruth Johnson, if she was an agent rather than an independent contractor, was an agent of the guardian of the person of Helen Sheehan, Mary Jane Nance, who was not a party to this action. Appellee's second contention is therefore also without merit.

## VII.

Appellee's final contention is that the court erred in vacating the award of puni-

tive damages against defendants' Helen Sheehan and the Bank. She argues that lack of capacity is not available to a defendant under a general denial and since appellants Sheehan and the Bank filed only a general denial, the defense was waived. Under the facts in this case, we do not agree that the defense was waived because not specifically pled. The appellee injected the issue of defendant Sheehan's incompetency in her petition, naming the Bank as Guardian. Appellee attempted to establish that defendant Sheehan was competent enough to appoint an agent or hire a servant or employee. Her efforts failed to overcome the statutory presumption of incompetency which arises from the fact that a court of competent jurisdiction has found it necessary to appoint a guardian and that the guardianship is still in existence.

■ Title 15 O.S. 1981 § 26 provides:

A minor or person of unsound mind cannot be subjected to exemplary damages, unless at the time of the act he was capable of knowing that it was wrongful.

The general rule of law is, and this statute provides, that punitive or exemplary damages cannot be recovered from an insane person, or one of unsound mind. Section 26, *supra,* provides for an exception when the person of unsound mind, at the time of the act, was capable of knowing it was wrongful. No case has been cited, nor have we found any, where punitive damages were allowed against a person of unsound mind for acts of their agents or the agents of their guardian, not committed in their presence or under their direction.

■ Although defendant Sheehan might have been held liable under 15 O.S. 1981 § 25, *supra,* for a tortious act committed by her personally, under the negligent entrustment theory, this theory was not supported by any evidence in this case and was properly excluded from the jury's consideration by the trial judge. It therefore follows that since there was no evidence to support any theory of direct negligence on the part of defendant Sheehan, she could only be held liable, if at all, under a theory of *respondeat superior.*

The trial court's ruling vacating the award of punitive damages against defendant Helen Sheehan and the Bank as her guardian was correct and appellee's final proposition is likewise without merit.

It is therefore ordered that the judgment of the trial court is Reversed and Remanded with directions to enter judgment for appellees Sheehan and Bank and for a new trial as to defendant Gaines.

REVERSED AND REMANDED.

HOWARD, J., concurs.

WILSON, P.J., concurs in part and dissents in part.