[Civ. No. 5464.  First Appellate District, Division One.—January 27, 1927.]

## E. A. KRUSE et al., Respondents, v. WHITE BROTHERS (a Corporation) et al., Appellants.

[1] NEGLIGENCE — PEDESTRIAN STRUCK BY AUTOMOBILE — CONTRIBUTORY NEGLIGENCE — ORDINARY CARE — EVIDENCE — FINDINGS.— In this action for damages for injuries sustained by a pedestrian when struck by an automobile while crossing a public highway, it is held that the evidence was sufficient to support the finding that plaintiff was not wanting in ordinary care.

[2] ID.—HIGHWAYS—RIGHTS OF PEDESTRIANS—CARE—AUTOMOBILES.— It is the duty of a pedestrian in crossing a street to use ordinary care for his own safety, and although his rights in the street are not superior, they are equal to those of the driver of an automobile.

[3] EMPLOYER AND EMPLOYEE—TORTS OF EMPLOYEE—DEVIATION FROM COURSE OF EMPLOYMENT—LIABILITY OF EMPLOYER.—In order to

---

2. Pedestrian's duty to look for approaching automobiles before crossing street, notes, 9 A. L. R. 1248; 44 A. L. R. 1299.  See, also, 3 Cal. Jur. 882; 2 R. C. L. 1186.

3. Liability of employer for injuries inflicted by automobile, notes, 17 A. L. R. 621; 29 A. L. R. 470.  See, also, 16 Cal. Jur. 1098; 18 R. C. L. 797.

exonerate the master for a tort committed by his servant, who abandons or departs from the business of the master and engages in some matter suggested solely for his own pleasure or convenience, or pursues some object which relates to an end or purpose which may be said to be the servant's individual and exclusive business, it is essential that the deviation be for purposes entirely personal to the servant, and a deviation will be regarded as immaterial if the servant combines his own business with that of the master or attends to both at substantially the same time.

[4] ID.—NATURE OF DEVIATION FROM COURSE OF EMPLOYMENT—EVIDENCE.—A mere deviation of the servant from the strict course of his duty does not release the master from liability, but in order to have that effect it must be so substantial as to amount to an entire departure.

[5] ID. — EXTENT OF DEVIATION BY EMPLOYEE — EVIDENCE.—Whether the servant's deviation from a strict course of duty has been so material or substantial as to constitute a complete departure is usually a question of fact.

[6] NEGLIGENCE — EMPLOYER AND EMPLOYEE — DEVIATION FROM PURSUIT OF EMPLOYER'S BUSINESS — EVIDENCE. — In this action for damages for personal injuries sustained by a pedestrian when struck by an automobile owned by a corporation and driven by an employee, the evidence was sufficient to show that the employee was engaged in the pursuit of his employer's business, although he had deviated slightly from his course, and to support the conclusion that acts not amounting to a complete turning aside from the employer's business so as to be inconsistent with its pursuit were anticipated by the employer and tacitly assented to.

[7] ID. — DEVIATION FROM COURSE OF EMPLOYMENT — FINDINGS—EVIDENCE.—In such action, it cannot be said as a matter of law that a detour from the most direct route to a point where he was to transact business for his employer, made by the employee for the purpose of leaving a companion at her place of residence, amounted to an abandonment of his employment, where the question was one on which reasonable men might differ and was for the jury, and their implied finding that it was not such abandonment was supported by the evidence.

[8] ID.—SCOPE OF EMPLOYMENT—INSTRUCTIONS—VERDICT —EVIDENCE. In such action, an instruction directing a verdict for plaintiff, in the event that the jury found certain facts to be true, was not erroneous as ignoring the defense that the driver of the automobile was not acting within the scope of his authority, where that defense was covered by other instructions, and the use of the word "defendants" necessarily implied that the jury must find

5. See 18 R. C. L. 796.

in connection with the facts specified that the employee was acting within the scope of his employment.

[9] ID. — EVIDENCE — INFERENCES —INSTRUCTIONS—ABSENCE OF MISCARRIAGE OF JUSTICE. — In such action, an instruction in effect directing the jury to infer from admitted facts that the employee was acting within the scope of his employment, although erroneous, did not amount to a miscarriage of justice requiring a reversal under section 4½ of article VI of the constitution, where the evidence was sufficient to support the findings of the jury that the employee was acting within the scope of his employment without the aid of the inferences referred to in the instruction.

[10] ID. — INFERENCES REGARDING EMPLOYMENT—EVIDENCE—INSTRUCTIONS.—In such action, an instruction that the inference that at the time of the accident the employee was engaged in the business of the defendant employer may be overcome by "satisfactory evidence," if erroneous, was not prejudicial, where the jury was also instructed that in civil cases a preponderance of evidence is all that is required, and that if they found that the employee was not performing any work for his employer, but was on a mission of his own, its verdict should be for the employer, notwithstanding that the latter owned the automobile and that the employee was its driver.

---

(1, 2) 42 C. J., p. 1147, n. 34, p. 1268, n. 17; 28 Cyc., p. 913, n. 11. (3) 39 C. J., p. 1297, n. 13, p. 1298, n. 16. (4) 39 C. J., p. 1297, n. 13. (5) 39 C. J., p. 1363, n. 24, 26. (6) 39 C. J., p. 1359, n. 58. (7) 42 C. J., p. 1258, n. 99, p. 1259, n. 3. (8) 42 C. J., p. 1280, n. 80. (9) 4 C. J., p. 1173, n. 70; 42 C. J., p. 1289, n. 49. (10) 4 C. J., p. 771, n. 75; 38 Cyc., p. 1686, n. 50, p. 1785, n. 90.

APPEALS from a judgment of the Superior Court of the City and County of San Francisco. Franklin A. Griffin, Judge. Affirmed.

The facts are stated in the opinion of the court.

J. E. Reardon, Wm. M. Abbott, K. W. Cannon and Walter H. Linforth for Appellants.

Preston & Duncan and Robert E. Hatch for Respondents.

CASHIN, J.—Appeals by defendants from a judgment entered on a verdict for the plaintiffs in an action to recover for personal injuries.

E. A. Kruse is the husband of Madeline C. Kruse, and the latter—who will be hereinafter referred to as the plaintiff—while crossing a public highway known as the Alameda, near its intersection with Yosemite Avenue in Berkeley, Alameda County, was injured by an automobile owned by the corporation defendant and operated by Meyer, one of its employees. As grounds for reversal of the judgment it is urged by appellant corporation that the evidence is insufficient to sustain a finding that Meyer was acting within the scope of his employment, and that certain instructions to the jury were prejudicially erroneous; and, by appellant Meyer, that the only inferences reasonably to be drawn from the evidence support his special defense of contributory negligence.

Meyer, who resided in Oakland, was there employed as a salesman for the corporation, a dealer in hardwood lumber, with its place of business in San Francisco. According to the testimony his working hours commenced at 8 A. M. and ended at 5 P. M., it being his duty during those hours to solicit orders for his employer, for which purpose the automobile was furnished by the latter. The automobile when not in use was kept in a garage in the possession of Meyer, the employer making a money allowance for this service. Some days before the date of the accident—which occurred on November 23, 1921, at about 6 P. M.—Bruce Bartholomew, who wished to purchase a quantity of hardwood lumber, communicated his wants to Meyer, and the testimony tends to show that it was the intention of the latter on the evening of the accident to call at the Bartholomew residence, which was situated at Colusa Avenue between San Pedro and Tacoma Avenues, one block southwest of the Alameda. At about 5 P. M. on that day Meyer drove the automobile from the yard of a lumber company, to which his duties had taken him and which was situated several blocks south and west of the Bartholomew residence, to a point several blocks east and south of the yard mentioned. He there by previous arrangement met Miss Kaeha Ingram, who also resided on Colusa Avenue, but four blocks northwest of the Bartholomew residence. Meyer testified that, accompanied by her, he drove back over the same route to Milvia Street, which runs north from the route previously traversed, followed this street to Hopkins Street and thence

through the latter to the Alameda. From this point for a considerable distance the Alameda runs in a northerly direction, thence turns to the northwest, from the turn running nearly parallel with the section of Colusa Avenue in which are situated the residences mentioned. These streets are connected by cross-streets, two of which, namely, San Pedro and Tacoma Avenues, lead from the Alameda to points between which is situated the Bartholomew residence, and two, called Capistrano and San Lorenzo Avenues, join Colusa Avenue farther to the northwest at points nearer the Ingram residence. Meyer testified that he, with his companion, proceeded along the Alameda, passing San Pedro and Tacoma Avenues, and then turned to the northeast near its intersection with Capistrano Avenue into a street known as Lovers' Lane, which follows a winding course in that direction, ending at Yosemite Avenue. The latter street, which Meyer followed, runs thence to the west and ends at the Alameda at the place of the accident, which was northeast of the residences and cross-streets mentioned. The distance from the junction of Tacoma Avenue with the Alameda along the latter to Lovers' Lane and thence through the lane and Yosemite Avenue to the point of the accident was approximately 2,150 feet; and from the junction mentioned directly along the Alameda to the same point it is approximately 1,600 feet. Meyer further testified that it was his intention to turn at the place of the accident and proceed southeast along the Alameda to San Lorenzo Avenue, distant about 400 feet, and thence to the junction of the latter with Colusa Avenue, which junction is approximately 600 feet from the Bartholomew residence and 1,000 feet from the Ingram residence; thence to drive northwest to a point near the latter residence, allow his companion to alight, and then, if time permitted, to proceed to the dwelling of Bartholomew.

To prove that there was no diversion from the direct route to the latter residence plaintiff sought to show by certain physical conditions that, contrary to the testimony of Meyer and his companion, he reached Yosemite Avenue by a route to the east of the Alameda and Lovers' Lane. On the evening of the accident, which was dark, vision being made more difficult by a thick fog, the plaintiff, who was proceeding to her home, in attempting to cross from the southwest

to the northeast side of the Alameda to a point a few feet
to the north of a triangular parked space at its junction
with Yosemite Avenue, was struck by the automobile driven
by Meyer, which approached from the east along the latter
street and turned in a northwesterly direction into the Ala-
meda. Yosemite Avenue before reaching the Alameda di-
vides in order to permit vehicles to pass to the north and
south of the parked space mentioned, the north curb line
of the avenue turning to the northwest for that pur-
pose. The plaintiff testified that she stopped, looked, and
listened before starting to cross; that she neither saw nor
heard the approach of an automobile; that she then pro-
ceeded to the north of the parked space, where she stopped
and looked east along Yosemite Avenue; that she saw the
lights of an automobile in that direction which appeared
to be stationary; that hearing no warning signal she con-
tinued her course to the gutter on the farther side of the
Alameda and had placed her foot on the curb when, having
seen no approaching light until immediately before the im-
pact, she was without other warning struck and injured. Ap-
pellant Meyer admitted that the automobile rounded the curb
to the north at a speed between ten and fifteen miles an
hour; that he had not seen respondent until the car reached
the point about two feet from the place where she was
struck, and that the horn was not sounded.

[1, 2] While, as contended by Meyer, it was the duty of
the plaintiff to use ordinary care for her own safety, her
rights in the street, although not superior, were equal to his,
and her testimony, if believed by the jury, was sufficient, in
view of the circumstances, to sustain the finding that in
pursuing the course shown she was not wanting in ordinary
care. As stated, Meyer was a salesman, and while it appears
from the testimony of officers of the corporation that he
had been instructed that the auto should be used only for
business purposes, it further appears from that of the sales
manager that the latter knew that the order was not being
strictly followed. The automobile was at all times in
Meyer's possession, and he was not forbidden to use it for
business purposes after his regular hours, nor to permit
others to accompany him while so using it. He was given a
wide discretion as to his movements, not being restricted—

as might happen with an ordinary servant—to particular routes while performing his duties.

[3] In *Gousse* v. *Lowe*, 41 Cal. App. 715 [183 Pac. 295], —where it appeared that it was the duty of a servant to drive his employer's automobile from a garage to the home of the latter four blocks to the west, but who drove the car on a mission solely his own to a point two and one-half miles to the east, a collision occurring while returning to the garage—it was held that the act of the servant was not within the scope of his employment, following the general rule there stated that if a servant abandons or departs from the business of the master and engages in some matter suggested solely for his own pleasure or convenience, or pursues some object which relates to an end or purpose which may be said to be the servant's individual and exclusive business, and while so engaged commits a tort, the master is not answerable (*Kish* v. *California State Auto Assn.*, 190 Cal. 246 [212 Pac. 27]). To exonerate the master, however, it is essential that the deviation be for purposes entirely personal to the servant (39 Cor. Jur., p. 1297, Master and Servant, secs. 1493, 1494); and a deviation will be regarded as immaterial if the latter combines his own business with that of the master or attends to both at substantially the same time (*Brimberry* v. *Dudfield Lumber Co.*, 183 Cal. 454 [191 Pac. 894]). [4] A mere deviation from the strict course of his duty does not release the master from liability. In order to have that effect it must be so substantial as to amount to an entire departure (39 Cor. Jur., p. 1297, Master and Servant, sec. 1493). As the rule has been stated, "One does not cease to be acting within the course of the master's employment because his most direct and immediate pursuit of the master's business is subject to necessary, usual or incidental personal acts, nor even by slight and immaterial delays or deflections from the most direct route for a personal or private purpose, the pursuit of the master's business continuing to be the controlling purpose. Such acts, not amounting to a turning aside completely from the master's business so as to be inconsistent with its pursuit, are often only what might be reasonably expected, to which, therefore, the master's assent may be fairly assumed; or they are in many instances the mingling with the pursuit

of the master's business some purpose of the servant's own'' (Shearman & Redfield on Negligence, 6th ed., sec. 147a).

[5] Whether there has been a deviation so material or substantial as to constitute a complete departure is usually a question of fact. In some cases the deviation may be so marked, and in others so slight relatively, that the court can say that no conclusion other than that the act was or was not a departure could reasonably be supported; while in still others the deviation may be so uncertain in extent and degree in view of the facts and circumstances as to make the question of what inferences should be drawn from the evidence properly one for the jury (*Healey* v. *Corkrill*, 133 Ark. 327 [L. R. A. 1918D, 115, 202 S. W. 229]; *Ritchie* v. *Waller*, 63 Conn. 155 [38 Am. St. Rep. 361, 27 L. R. A. 161, 28 Atl. 29]; *Gousse* v. *Lowe, supra; Dennis* v. *Miller Automobile Co.*, 73 Cal. App. 293 [238 Pac. 739]).

[6] In the instant case the evidence was sufficient to show that Meyer was not required to follow certain or fixed routes while engaged in the performance of his duty, and to support the conclusion that acts not amounting to a complete turning aside from the employer's business so as to be inconsistent with its pursuit were anticipated by the employer; and that deviations from the strict line of his employment, so long as the pursuit of the employer's business remained the controlling purpose, were tacitly assented to by the latter.

In *Dennis* v. *Miller Automobile Co., supra*, it appeared that it was the duty of an employee of the defendant corporation to transport packages from its garage to the office of an express company situated fourteen blocks to the west and ten to the north of the garage; that instead of proceeding to his destination by the usual and more direct route to the west and thence to the north, as an accommodation to other employees, who wished to be transported to their home situated six blocks to the south and eleven to the west of the garage, he proceeded south to the street on which the residence was situated, and thence toward the west, and that when at a point near the residence an accident occurred. It was there held that the question whether the employee was then acting within the scope of his authority was one for the jury.

[7] Whether the detour made by Meyer on the evening of the accident amounted to an abandonment of the em-

ployment was in view of the evidence a question on which reasonable men might differ. We cannot say as a matter of law that such was its effect; and are of the opinion that, as in the case last cited, the question was one for the jury; and that their implied finding that it was not such abandonment is supported by the evidence.

It is admitted that the corporation owned the car and that it had been furnished to the employee for use in its business. It might fairly be inferred from the testimony of Meyer and Bartholomew that the pursuit of the master's business was the controlling purpose of the employee throughout his course, and that the deviation from the direct route was within the rule stated—one which the employer might reasonably be deemed to have anticipated and assented to, and was not such as to amount to an abandonment of the employment.

[8] The court by three of its instructions directed a verdict for the plaintiff in the event the jury found certain facts to be true. Appellant corporation contends that in so doing the court ignored the defense that Meyer at the time of the accident was not acting within the scope of his employment. Two of the instructions referred to provisions of the law requiring the signal device directed to be attached to a motor vehicle to be sounded as a warning of danger, and forbidding the operation of the car without adequate braking equipment; and the third to the care required of the driver. By the first the jury were told that if at the time of the accident the ''defendants'' violated the first provision mentioned, and by the second and third that if the ''defendants'' at the time of the accident were operating the car without adequate brakes or without due care as to speed, they should render a verdict in favor of the plaintiff if they further found that the omissions mentioned were the proximate cause of the injury and that plaintiff was not guilty of contributory negligence.

The question presented by the defense mentioned was fully covered by other instructions; and the use of the word ''defendants'' necessarily implied that the jury must find in connection with the facts specified that the servant at the time of the accident was acting within the scope of his employment.

[9] The jury were further instructed as follows: "In this case it is admittedly the fact that at the time of the accident the defendant Meyer was in the employ of the defendant White Brothers Inc., and that the automobile which he was driving was the property of the defendant White Brothers, Inc., and was entrusted by that company to Meyer for use as a solicitor for said White Brothers. From these facts the law infers that at the time of the accident in question the defendant Meyer was acting within the scope of his employment by the defendant White Brothers Inc. This inference, however, may be overcome by other evidence in this case."

It is contended that this instruction in effect directed the jury to infer from the admitted facts that the servant at the time of the accident was acting within the scope of his employment. As held, the jury might draw the inference in the absence of proof to the contrary (*McWhirter* v. *Fuller*, 35 Cal. App. 288 [170 Pac. 417]), but are not bound to do so (*Davis* v. *Hearst*, 160 Cal. 143 [116 Pac. 530]; *Fahey* v. *Madden*, 56 Cal. App. 593 [206 Pac. 128]); and an instruction that a presumption arises or that the law infers therefrom that the servant was so acting is a misdirection of the jury (*Fahey* v. *Madden, supra; Albert* v. *McKay & Co.*, 53 Cal. App. 325 [200 Pac. 83]) which, as held in the cases last cited, is a ground for reversal if, as section 4½ of article VI of the constitution in effect provides (*People* v. *Chapman*, 55 Cal. App. 192 [203 Pac. 126]; *Vallejo & Northern R. R. Co.* v. *Reed Orchard Co.*, 169 Cal. 545 [147 Pac. 238]), it affirmatively appears that the error resulted in a miscarriage of justice. The testimony of Bartholomew tends to prove the fact that an engagement had been made for the evening in question, and this with Meyer's testimony that he then intended, time permitting, to call on the former was sufficient to support the finding of the jury without the aid of inferences drawn from the admitted facts referred to in the instruction; and we cannot say that 'this finding was based on the erroneous statement that a presumption arose therefrom.

[10] Appellant corporation in its closing brief calls attention to a further instruction given at plaintiff's request which was as follows: "The inference that at the time of the accident the defendant Meyer was engaged in the business of the

defendant White Brothers may be overcome by satisfactory evidence that Meyer had departed from the business of White Brothers and was engaged exclusively on business of his own.'' It is urged that this instruction placed an undue burden on appellant, requiring more than a preponderance of the evidence to overcome the inference which might be drawn by the jury.

In *Hutson* v. *Southern Cal. Ry. Co.*, 150 Cal. 701 [89 Pac. 1093], an instruction was given which stated in substance that the defense of contributory negligence must be proved to the satisfaction of the jury by a preponderance of the evidence. The court in reversing the judgment and ordering a new trial on other grounds said with respect to the instruction that ''in a civil case it is the weight of evidence—which is sufficient to establish a fact. As given the instruction might tend to confuse a jury into believing that something more than this was required.'' In a dissenting opinion Justice Shaw, referring to the criticised instruction, said: ''The court seems to have feared that the words 'to your satisfaction' might be understood by the jury to mean 'beyond a reasonable doubt.' But the jury must be presumed to understand words according to their ordinary meaning.''

The court, in *Boa* v. *San Francisco-Oakland Terminal Railways*, 182 Cal. 93 [187 Pac. 2], with respect to a similar instruction given by the trial court, said: ''This court has repeatedly decided that an instruction which in substance informs the jury that a party having the burden of proof as to a certain fact or issue must establish it to the satisfaction of the jury by the fair preponderance of the evidence is not reversible error where the other instructions in the case clearly define what is meant by a preponderance of the evidence and distinctly advise them that a preponderance of the evidence will be sufficient to justify a finding in favor of the party having the burden. In such cases it is held that the words 'to the satisfaction of the jury' are equivalent to 'find' or 'believe.' ''

In the absence of an instruction as to the signification given the term ''satisfactory evidence'' by the code section (Code Civ. Proc., sec. 1835), as said in the Hutson case, *supra*, ''The jury must be presumed to understand the words according to their ordinary meaning.'' According to Webster, New International Dictionary, the word ''satis-

factory" means "sufficient"; and by the Century Dictionary and Cyclopedia the definition "fulfilling all demands and requirements" is given, the term "satisfactory evidence" being therein defined as "such evidence as in amount is adequate to justify the court or jury in adopting the conclusion in support of which it is adduced."

In the instant case the jury was instructed that in civil cases a preponderance of the evidence is all that is required. The meaning of the term was defined; and it was further instructed that if it found from the evidence that at the time of the accident the driver was not performing any work for his employer, but was on a mission of his own, its verdict should be for the appellant corporation notwithstanding that the latter owned the automobile and the driver was its employee.

These instructions were sufficient to correct the impression which the criticised instruction might tend to create, and the latter, if erroneous, was not prejudicial.

The evidence was sufficient to sustain the verdict, and we find no error in the proceedings which can reasonably be said to have resulted in a miscarriage of justice.

The judgment is affirmed.

Tyler, P. J., and Knight, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on February 26, 1927, and a petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 28, 1927.