**OIL DAILY, INC.**, a corporation, Appellant,

v.

Chester L. **FAULKNER**, Appellee.

No. 6332.

United States Court of Appeals
Tenth Circuit.

Sept. 3, 1960.

Philip N. Landa, Tulsa, Okl. (Chris L. Rhodes, Tulsa, Okl., was with him on the brief), for appellant.

William Bishop, Seminole, Okl. (Joe L. Henbest, Columbus, Kan., was with him on the brief), for appellee.

Before BRATTON, PICKETT and LEWIS, Circuit Judges.

PICKETT, Circuit Judge.

This is an automobile accident case in which the District Court first determined the liability of the defendant Oil Daily, Inc., for damages resulting from

a collision between an automobile driven by its employee Fred R. Williams and a truck driven by the plaintiff Faulkner. As authorized by 28 U.S.C. § 1292(b), we granted an appeal from an order holding that at the time of the collision Williams was acting within the scope of his employment so as to impose liability on defendant Oil Daily, Inc. under the doctrine of respondeat superior.

The facts are not in dispute. Williams was an advertising manager of Oil Daily in nineteen southwestern states. His duties required him to travel throughout his territory soliciting business for his employer and acting as a public relations representative. He was free to arrange his trips and to travel by any means which he saw fit. Oil Daily paid all expenses and he was allowed mileage for the use of his personal automobile.

On January 20, 1958 Williams left his headquarters in Dallas, Texas in his own automobile for a business trip to Kansas City, Missouri via Tulsa, Oklahoma. He transacted company business in Tulsa and proceeded on to Kansas City by plane. He returned to Tulsa during the afternoon of January 24th and left that evening by automobile on his return trip to Dallas. He arrived at Durant, Oklahoma rather late in the evening and stopped at a roadside cafe and private club, remaining there for some time. He then proceeded to Denison, Texas where he stopped for a meal. Being too tired to continue, he decided to return to Durant, a distance of 21 miles, and spend the remainder of the night with a friend. Upon his arrival in Durant he was unable to locate the friend, who lived some distance from the city, and encountered difficulty with his automobile which required the use of a wrecker to extricate it from where it had gone off the surfaced road. Williams decided to sleep in the car until morning. He then resumed his trip to Dallas over the same highway which he had earlier traveled. Just prior to arriving in Denison, Williams went to sleep and his automobile collided with the motor vehicle of plaintiff. Oil Daily, while conceding the employment of Williams and that the trip was within the scope of that employment,[1] asserts that the trip from Denison back to Durant was a deviation from and an abandonment of the purposes of employment and amounted to a "frolic on his own," for which the employer was not responsible.

■■ It is the general law that an employer is not liable for a tort of an employee committed outside the scope of his employment and while engaged in a mission of his own. Phillips Petroleum Co. v. Ward, 181 Okl. 462, 74 P.2d 614; Drake v. Specht, 175 Okl. 414, 53 P.2d 235. In Wilburn v. McRee, 10 Cir., 193 F.2d 425, 426, we reviewed the Oklahoma cases on the subject and stated that the test was whether the conduct of the employee amounted to a departure or a mere deviation from his line of duty, taking into consideration the purpose of the mission and the distance traveled. We said:

1. In its brief, Oil Daily makes this statement:
"To eliminate all argument thereon, we, at the outset, make the following concessions and agree, as a matter of fact and law, that:
1. Williams was in Oil Daily's general employment.
2. Williams was not restricted as to the mode of transportation he could use in his travels for Oil Daily. He could use a bus, a train, hire a car, use his own car, a plane, use a street car or walk.
3. Williams was not restricted as to any route of travel. In this instance he could have traveled Highway 75 by way of Durant and Denison, which he chose, or he could have gone to Oklahoma City and traveled U.S. Highway 77 to Ardmore, Oklahoma, and to Dallas by way of Gainesville and Denton. Whichever route he chose would have been within his discretion and authority and he would have been within the scope of employment regardless of whether one route is longer or shorter than another.
4. Seeking lodging, food and conveniences for his comfort, health, safety and welfare, was within the scope of the employment of Williams, within bounds of reason, of course."

"Analyzing the Oklahoma cases, we conclude that under its decisions abandonment does not result merely because a specific instruction as to the route to be taken is disobeyed, nor yet that it results because a deviation from the designated or ordinarily traveled route is slight or substantial. It results only when taking into consideration all these factors, in light of the particular evidence in each case, it can be said that the servant was stepping aside in some marked or unusual manner for a purpose wholly disconnected with his employment." (Footnote omitted.)[2]

See also Retail Merchants Ass'n, etc. v. Peterman, 186 Okl. 560, 99 P.2d 130; 35 Am.Jur., Master and Servant, §§ 553–556; Annotation 51 A.L.R.2d 8.

In the course of his employment, Williams was traveling about his territory approximately 91% of his time; he had no prescribed hours of employment; he was free to exercise his own judgment in traveling, in time spent on the road, in selecting hotels or other living quarters, and when he should return to his headquarters. Had he sought lodging in Denison, Texas, it is admitted there would have been no abandonment of his employer's business. The decision to return to Durant to spend the night is not shown to be an independent trip for anything other than spending the night there. We cannot say as a matter of law that such trip was a departure wholly disconnected from the company's business which would relieve it from its liability as an employer.

Affirmed.

---

2. In Phillips Petroleum Co. v. Ward, 181 Okl. 462, 74 P.2d 614, 617, the Supreme Court of Oklahoma quoted with approval language from Kruse v. White Brothers, 81 Cal.App. 86, 253 P. 178, 181, as follows:

"'One does not cease to be acting within the course of the master's employment because his most direct and immediate pursuit of the master's business is subject to necessary, usual or incidental personal acts, nor even by slight and immaterial delays or deflections from the most direct route for a personal or private purpose, the pursuit of the master's business continuing to be the controlling purpose. Such acts, not amounting to a turning aside completely from the master's business so as to be inconsistent with its pursuit, are often only what might be reasonably expected, to which, therefore, the master's assent may be fairly assumed; or they are in many instances the mingling with the pursuit of the master's business some purpose of the servant's own.' Shearman & Redfield Negligence, 6th Ed., § 147a."