2013 OK 48

Charles SHEFFER; Jennifer Sheffer; and J.S., a minor by and through his parents and next friends, Charles Sheffer and Jennifer Sheffer, Plaintiffs–Appellants,

v.

CAROLINA FORGE COMPANY, L.L.C., Defendant–Appellee.

No. 109,199.

Supreme Court of Oklahoma.

June 25, 2013.

**546**

Ed Hershewe, Joplin, Missouri, Attorney for Plaintiffs–Appellants.

Trevor Hughes & J. Christopher Davis, Johnson & Jones P.C., Tulsa, Oklahoma, Attorneys for Plaintiffs–Appellants.

Richard L. Yohn, McAlester, Oklahoma, Attorney for Plaintiffs–Appellants.

F. Thomas Cordell, Jr., Rochette Wurth, Ryan L. Dean, Frailey, Chaffin, Cordell, Perryman, Sterkel, McCalla & Brown L.L.P., Chickasha, Oklahoma, Attorneys for Defendant–Appellee Carolina Forge Company, L.L.C.

GURICH, J.

### Facts & Procedural History

¶ 1 On August 24, 2006, William Garris III and David Billups flew from Raleigh, North Carolina, to Joplin, Missouri, on a business trip for their employer, Carolina Forge Company, L.L.C. Garris was the quality manager for Carolina Forge, and Billups was a customer service representative. The trip was scheduled to take place from August 24, 2006, to August 27, 2006, in Joplin, Missouri. Normally, William Casella, the corporate representative and plant manager for Carolina Forge, accompanied Garris to Joplin to call on customer F.A.G. Bearings. But Mr. Casella had another commitment, so Billups accompanied Garris on this particular trip. The primary purpose of the trip was to participate in a golf outing at the invitation of F.A.G. Bearings.

¶ 2 Carolina Forge paid for Garris and Billups' airline tickets and rental car in advance of the trip.[1] Carolina Forge also gave Garris and Billups $600.00 cash to pay for expenses incurred during the trip. Helen Mixon, human resource administrator for Carolina Forge, testified in her deposition that the $600.00 was intended to pay for entertaining customers and for gas in the rental car. Carolina Forge also reimbursed employees for additional out of pocket expenses during business trips, including meals, snacks, and alcoholic beverages.

¶ 3 Garris and Billups arrived in Joplin on the evening of August 24, 2006, and checked into their hotel. On the morning of August 25, 2006, another employee of Carolina Forge met Garris and Billups at a Bob Evans Restaurant in Joplin, which was adjacent to their hotel, before visiting the F.A.G. Bearings headquarters. Next, Garris and Billups arrived at the customer's facility, where they took a tour and then delivered a presentation to company representatives.

¶ 4 Following the presentation, Garris and Billups toured another portion of the facility. Garris and Billups then took three F.A.G. Bearings representatives to lunch at the Rib Crib in Joplin. After lunch, Garris and Billups went back to their hotel rooms to change clothes and then met F.A.G. Bearings representatives for golf at the Briarbrook Golf Course just outside Joplin.

¶ 5 After playing golf, Garris and Billups went back to their hotel, stopping on the way to purchase toiletries and other necessities. Garris and Billups then had dinner at Timberline Steakhouse in Joplin. No F.A.G. Bearings representatives joined Garris and Billups for dinner at the Timberline Steakhouse. After dinner, Garris and Billups went

---

1. Carolina Forge also reserved hotel rooms for the men in advance of the trip. The record indicates the men paid for the hotel and then were reimbursed by Carolina Forge upon return.

Plaintiff's Response to Defendant Carolina Forge Company's Motion for Summary Judgment and Brief in Support, Ex. B at 64.

to the Buffalo Run Casino. No representatives from F.A.G. Bearings accompanied Garris and Billups to the casino. The Buffalo Run Casino, located in Miami, Oklahoma, is approximately 30 miles west of the Timberline Steakhouse in Joplin, Missouri.

¶ 6 According to Garris' affidavit, upon arriving at the casino, Garris and Billups went "separate ways, rarely speaking with one another." [2] Garris' affidavit states he "participated in activities associated with the casino, using [his] own money." [3] After spending several hours at the casino, Garris and Billups decided to return to their hotel. Upon leaving the casino, Billups drove the rental car, which was rented in the name of the passenger, William Garris.

¶ 7 Billups and Garris intended to return to Joplin traveling on Interstate Highway 44. However, while leaving Miami, Billups missed the eastbound ramp which would have taken them back to Joplin and instead drove west on Interstate Highway 44 toward Tulsa. Billups turned around in a lane barricade opening.[4] Billups' vehicle collided with Plaintiffs' vehicle, an 18–wheeler tractor trailer, resulting in injuries to all three passengers.[5]

¶ 8 Plaintiffs filed suit in the District Court of Ottawa County against Carolina Forge, alleging negligence under the doctrines of respondeat superior and negligent entrustment.[6] Carolina Forge moved for summary judgment, which the trial court granted, finding Garris and Billups were not in the course and scope of their employment at the time of the accident and Carolina Forge did not negligently entrust the rental vehicle to its employees.

¶ 9 Plaintiffs appealed the trial court's Journal Entry granting summary judgment to Carolina Forge, filing a Petition in Error on February 18, 2011. This Court retained the case. We find reasonable minds could differ on the questions of whether employees of Carolina Forge were in the course and scope of their employment at the time of the accident and whether Carolina Forge negligently entrusted the rental vehicle to its employees.

### *Standard of Review*

¶ 10 An order sustaining summary judgment in favor of a litigant presents solely

---

2. Defendant Carolina Forge Company L.L.C.'s Motion for Summary Judgment and Brief in Support, Ex. A.

3. *Id.* Mr. Casella testified in his deposition that he could not recall whether Garris had ever indicated he had been drinking while at the casino. Garris' statement to Carolina Forge's workers' compensation carrier provides:

   Q: Okay, Ah, all right. So, you guys left the.. I'm sorry, you said between 12:15 to 12:30?
   R: Yeah, yeah.
   Q: Okay. At that point in time, when you hooked up at that point in time, did both of you guys still have a drink with you?
   R: Hmm, no, no. When we got ready to leave to go to the car.
   Q: When you get ready to leave to go to the car, who's driving?
   R: The last thing I remember is David telling me he was okay to drive and I agreed and that's the last thing I remember.
   . . .
   Q: Okay. All right. Let me back up here a little bit, okay? Would the money that you were spending in the casino to gamble and purchase whatever beers you were drinking, you.. you paid for that credit card or cash?
   R: That was cash out of my pocket.

Defendant Carolina Forge Company's Reply to Plaintiffs' Response to Defendant Carolina Forge Company's Motion for Summary Judgment and Brief in Support, Ex. A at 21–22.
   Ms. Mixon's deposition also indicates a toxicology report was done on Billups after the wreck, but the toxicology report is not included in the record. Plaintiff's Response to Defendant Carolina Forge Company's Motion for Summary Judgment and Brief in Support, Ex. B at 65–66. Ms. Mixon's deposition also indicates Garris and Billups had dinner and drinks at the Timberline Steakhouse and then drove to the casino. *Id.* Ex. B at 53–54.

4. This portion of Interstate Highway 44 is the Will Rogers Turnpike, which is a toll road and four-lane limited access highway extending from Tulsa to the Oklahoma–Missouri state line. Defendant Carolina Forge Company L.L.C.'s Motion for Summary Judgment and Brief in Support, Ex. I.

5. The collision also caused injuries to Garris and resulted in Billups' death.

6. Plaintiffs also asserted a claim for negligent hiring and training, which was disposed of in the trial judge's order granting summary judgment.

a legal matter. *Feightner v. Bank of Okla., N.A.*, 2003 OK 20, ¶ 2, 65 P.3d 624, 626. Questions of law mandate a de novo standard of review, which affords this Court with plenary, independent, and non-deferential authority to examine the issues presented. *Martin v. Aramark Servs., Inc.*, 2004 OK 38, ¶ 4, 92 P.3d 96, 97.

▮▮▮ ¶ 11 When examining an order sustaining summary judgment, this Court must determine whether the record reveals disputed material facts. *Cranford v. Bartlett*, 2001 OK 47, ¶ 3, 25 P.3d 918, 920. Even if basic facts are undisputed, motions for summary judgment should be denied, if from the evidence, reasonable persons might reach different inferences or conclusions from the undisputed facts. *Phelps v. Hotel Mgmt. Inc.*, 1996 OK 114, ¶¶ 6–7, 925 P.2d 891, 893. All facts and inferences must be viewed in a light most favorable to the party opposing summary adjudication. *Estate of Crowell v. Bd. of Cnty. Comm'rs of Cnty. of Cleveland*, 2010 OK 5, ¶ 22, 237 P.3d 134, 142.

### *Negligent Entrustment*

▮▮▮ ¶ 12 Negligent entrustment of an automobile occurs when the automobile is supplied, directly or through a third person, for the use of another whom the supplier knows, or should know, because of youth, inexperience, or otherwise, is likely to use it in a manner involving unreasonable risk of bodily harm to others, with liability for the harm caused thereby. *Green v. Harris*, 2003 OK 55, n. 5, 70 P.3d 866, 868 n. 5. *See also Shoemake v. Stich*, 1975 OK 55, ¶ 13, 534 P.2d 667, 669–70. This Court has long held that intoxication and the "propensity for becoming intoxicated" can result in liability for the supplier of the automobile if the supplier knows or has reason to know of such intoxication or propensity for becoming intoxicated.[7] *Nat'l Trailer Convoy, Inc. v. Saul*, 1962 OK 181, ¶ 10, 375 P.2d 922, 928–29; *Shoemake*, 1975 OK 55, ¶ 12, 534 P.2d at 669–70.

¶ 13 The record indicates Carolina Forge reserved and paid for the rental car for Garris and Billups for this particular business trip to Joplin.[8] Ms. Mixon testified the airline tickets and the rental car were purchased by the company before the men left for the trip.[9] The record also indicates the purpose of this particular business trip to Joplin was to entertain a customer of Carolina Forge.[10] Carolina Forge representatives had participated in this particular golf outing in previous years and *expected* its representatives to entertain its customers on business trips such as this one.[11] Entertainment often included taking customers out for drinks.[12] In fact, Carolina Forge encouraged such behavior on all business trips through its limitless reimbursement policy.[13] Carolina Forge employees, including Garris, had been reimbursed by Carolina Forge for numerous alcoholic beverages they consumed

---

However, they did not appeal the negligent hiring claim.

7. OUJI No. 10.16 states: "An owner [or provider] of a vehicle [or other dangerous instrumentality] has a duty to use ordinary care to avoid lending it to another person whom he knows [or reasonably should know] is [intoxicated/careless/reckless/incompetent to drive]."

8. Plaintiff's Response to Defendant Carolina Forge Company's Motion for Summary Judgment and Brief in Support, Ex. B at 33.

9. *Id.* Ex. B at 35–36.

10. *Id.* Ex. A at 16; Ex. B at 24.

11. *Id.* Ex. B at 47.

12. The following exchange took place during Ms. Mixon's deposition:
    Q: Thank you. A customer service representative, are they expected to entertain clients?
    A: Yes. When they would go on these trips, yes.
    Q: What type of entertainment is allowed?
    A: We would expect dinner: for them to take them out to dinner. I mean, that's what we would expect them to do. I don't know of anything other than that they would be needing.
    Q: Would that include drinks at dinner?
    A: Yes.
    Q: Would a customer service representative and quality manager be expected to take a customer out or customer representatives out for cocktails, for example?
    A: It's possible.
    Q: Have you reimbursed your customer representative, Mr. [Garris], and/or Mr. Billups, your quality manager, for alcoholic beverages that they consumed and customers consumed?
    A: Yes, we have.
    *Id.* Ex. B at 47–48.

13. *Id.* Ex. A at 22; Ex. B at 48–49.

on prior business trips. Receipts provided by Carolina Forge showed past reimbursements included alcoholic beverages at lunch, in the airport, in the afternoon and evening, at restaurants, at golf outings, and at bars and other establishments such as the "Thirsty Pony." [14] Employees of Carolina Forge were permitted to include alcoholic beverage expenses on their expense itemization reports for reimbursement by Carolina Forge *regardless* of whether the drinks were with customers.[15]

¶ 14 Although Carolina Forge reimbursed employees for all money spent on alcoholic beverages, Carolina Forge maintained no written corporate procedure, guideline, policy, or protocol regarding drinking and driving rental vehicles paid for by Carolina Forge.[16] Ms. Mixon was specifically asked: "As a matter of fact, there was never any prohibition on [Garris] eating and drinking and then getting in a rental car and driving, was there?" She answered, "[t]here was no written policy." [17] Viewing these facts in a light most favorable to the Plaintiffs, a reasonable person could conclude that Carolina Forge knew or had reason to know that its employees had the propensity to become intoxicated on business trips and that Carolina

Forge acted negligently when it rented a car for Garris and Billups without any corporate protocol regarding driving a rental car while intoxicated.[18]

¶ 15 Carolina Forge argues it cannot be liable for negligent entrustment because it did not have possession or control over the rental car at the time of the accident. "The rationale underlying imposition of negligent entrustment liability on suppliers of chattels is that one has a duty *not to supply* a chattel to another who is likely to misuse it in a manner causing unreasonable risk of physical harm to the entrustee or others." *Casebolt v. Cowan*, 829 P.2d 352, 360 (Colo.1992) (emphasis added) (citing Restatement (Second) of Torts § 390). If Carolina Forge, *at the time it paid for the rental car for its employees*, knew or should have known its employees were likely to drive the rental car while intoxicated, Carolina Forge had a duty to take reasonable actions to prevent such risks. Control at the time the automobile is supplied—the initial moment of entrustment—determines a supplier's negligence. *Id.*

¶ 16 In the same vein, Carolina Forge argues it did not entrust the vehicle to Billups

---

14. *Id.* Ex. B at 76 ("Q: On the other side, Labatt at the Thirsty Pony in Sandusky, Ohio[?]"). Approximately nine pages of Ms. Mixon's deposition testimony included questions regarding past expense receipts that were reimbursed by Carolina Forge. One exchange went as follows:

> Q: Then there's an [sic] Max & Ernst Concourse C at the Hopkins International Airport in Cleveland. There was a charge for a Bud Light that was reimbursed; is that correct?
> A: It was on the expense so it would have been reimbursed.
> Q: Then there's a Fox Sports Bar, Detroit Metro, a large Bud draft and side-shot—no side-shot, I guess—and the charge was, for the draft, 5 dollars and 29 cents. With tax, it was 5 dollars and 61 cents.
> A: (no response)
> Q: Is that correct?
> A: I see it, yes.
> Q: Then it appears in the middle there's a Carolina Varsity. It says one premium 22 ounce. Do you know if that's alcohol?
> A: I do not know.
> Q: Then under that, Bates Stamp 124, it's a Webster's Inn, and it shows that there was— the two drinks at the top, do you know if those are alcoholic beverages?
> A: I don't know.

> Q: Three drinks at the top.
> A: I do not know.
> Q: Bates Stamp 125, again, it's a place called Fox something in Detroit. It's a large Bud Light, Bud draft, for 5 dollars and 29 cents. Ms. Wurth: Object to form.
> Q: (By Mr. Hershewe) Do you see that?
> A: I see it.
> Q: That would have been paid for?
> A: Yes. It was turned in with the expense, yes.
> *Id.* Ex. B at 80–81.

15. *Id.* Ex. A at 42.

16. *Id.* Ex. B at 33–35; Defendant Carolina Forge Company's Reply to Plaintiffs' Response to Defendant Carolina Forge Company's Motion for Summary Judgment and Brief in Support, Ex. B at 29–30.

17. Plaintiff's Response to Defendant Carolina Forge Company's Motion for Summary Judgment and Brief in Support, Ex. B at 54.

18. This Court has determined that evidence of the propensity for becoming intoxicated is sufficient to submit a negligent entrustment question to the jury. *Nat'l Trailer Convoy*, 1962 OK 181, ¶ 10, 375 P.2d at 928.

because the vehicle was rented in Garris' name and the company didn't know Billups was going to drive the car. However, Carolina Forge maintained no policy on who could drive the rental car.[19] In fact, Mr. Casella testified that had Garris allowed Billups to drive, that would have been acceptable to the company.[20]

¶ 17 Finally, Carolina Forge argues it cannot be held liable for negligent entrustment unless the Plaintiffs can first prove Garris and Billups were acting within the course and scope of their employment at the time of the accident. Liability for negligent entrustment arises from the *act of entrustment*, not the relationship of the parties. *Casebolt*, 829 P.2d at 360 ("Liability for the negligence of the incompetent driver to whom an automobile is entrusted does not arise out of the relationship of the parties, but from the act of entrustment of the motor vehicle."). As such, when an employer provides an employee with a vehicle, whether the negligent act was done during the course and scope of an employee's employment is not relevant to the negligent entrustment analysis.[21] The evidence in the record does not support a determination *as a matter of law* that Carolina Forge did not negligently entrust the rental car to Garris and Billups. The issue is a question of fact for the jury. Summary judgment was improper.

## Respondeat Superior

¶ 18 "To hold an employer responsible for the tort of an employee, the tortious act must be committed in the course of the employment and within the scope of the employee's authority." *Baker v. Saint Francis Hosp.*, 2005 OK 36, ¶ 10, 126 P.3d 602, 605. "Under the theory of *respondeat superior*, one acts within the scope of employment if engaged in work assigned, or if doing that which is proper, necessary and usual to accomplish the work assigned, or doing that which is customary within the particular trade or business." *Tuffy's, Inc. v. City of Okla. City*, 2009 OK 4, ¶ 7, 212 P.3d 1158, 1163. More specifically, in determining whether an employee was in the course and scope of employment at the time of an automobile accident, this Court has looked to whether, taking into consideration the purpose of the mission and the distance traveled, it could be said that the employee was stepping aside in some marked or unusual manner for some purpose wholly disconnected with his employment.[22] *Retail Merchants Ass'n v. Peterman*, 1940 OK 49, ¶ 11, 186 Okla. 560, 99 P.2d 130, 132.

¶ 19 In some cases, the deviation may be so marked or slight that, as a matter of law, only one reasonable conclusion can be drawn from the facts, and the issue of whether an employee was within the scope of em-

19. Garris' statement to Carolina Forge's workers' compensation carrier indicates he allowed Billups to drive upon leaving the casino. Defendant Carolina Forge Company's Reply to Plaintiffs' Response to Defendant Carolina Forge Company's Motion for Summary Judgment and Brief in Support, Ex. A at 21–22.

20. Plaintiff's Response to Defendant Carolina Forge Company's Motion for Summary Judgment and Brief in Support, Ex. A at 34.

21. *See Blagg v. Line*, 09–CV–0703–CVE–FHM, 2012 WL 263034, at *4 (N.D.Okla. Jan. 30, 2012) (finding plaintiff was not required to prove an employment relationship between owner and person entrusted with vehicle because employment relationship is not an element of negligent entrustment). *See also Am.Jur. Negligence* § 319.

22. OUJI 6.7 states:
An employee is acting within the scope of [his] employment if [he] is engaged in the work which has been assigned to [him] by [his] em-

ployer, or is doing that which is proper, usual and necessary to accomplish the work assigned to [him] by [his] employer, or is doing that which is customary within the particular trade or business in which the employee is engaged.
Oklahoma Uniform Jury Instruction 6.7–Scope of Employment.
OUJI 6.12 goes onto state:
An [employee] is acting outside the scope of [his] [employment] when [he] substantially departs from [his] [employer's] business by doing an act intended to accomplish an independent purpose of [his] own or for some other purpose which is unrelated to the business of [his] [employer] and not reasonably included within the scope of [his] express or implied [employment]. Such departure may be of short duration, but during such time the [employee] is not acting within the scope of [his] [employment].
Oklahoma Uniform Jury Instruction 6.12–Scope of Authority or Employment–Departure.

ployment may be decided by the court. *Id.*[23] However, when the degree and extent of the deviation is so uncertain that *reasonable contrary inferences may be drawn*, the issue *must* be sent to the jury. *Id. See also Baker,* 2005 OK 36, ¶ 16, 126 P.3d at 607. This Court has long held that the question of whether an employee has acted within the course and scope of employment *at any given time* is a question for the trier of fact. *Baker,* 2005 OK 36, ¶ 16, 126 P.3d at 606 (citing *Chicago, R.I. & P. Ry. Co. v. Radford,* 1913 OK 7, ¶ 11, 36 Okla. 657, 129 P. 834, 838).

¶ 20 In *Oil Daily Inc. v. Faulkner,* 282 F.2d 14 (10th Cir.1960), a case decided under Oklahoma law by the Tenth Circuit, Oil Daily's employee was an advertising manager in 19 southwestern states. *Id.* at 15. His duties required him to travel throughout the southwest soliciting business for his employer and acting as a public relations representative. *Id.* He was free to arrange his trips and to travel by any means he saw fit. *Id.* Oil Daily paid all expenses, and he was allowed mileage for the use of his personal automobile. *Id.* On one particular trip, he left his headquarters in Dallas, in his own automobile, for a business trip to Kansas City, via Tulsa. *Id.* He transacted company business in Tulsa and proceeded on to Kansas City by plane. *Id.* He returned to Tulsa in the afternoon and left that evening in his automobile for the return trip to Dallas. *Id.* He arrived in Durant, Oklahoma, late in the evening and stopped at a roadside café and private club, where he remained for some time. *Id.* He then proceeded to Denison, Texas, where he stopped for a meal. *Id.* Too tired to continue, he returned to Durant, which was approximately 21 miles from Denison, to spend the remainder of the night with a friend. *Id.* He was unable to locate the friend, had difficulty with his automobile, and decided to sleep in his car until morning. *Id.* He then resumed his trip to Dallas; however, just prior to reaching Denison, he fell asleep and his automobile collided with the plaintiff's vehicle. *Id.*

¶ 21 The Eastern District of Oklahoma found the employer, Oil Daily, liable under the respondeat superior doctrine. *Id.* at 14. Oil Daily appealed, and the Tenth Circuit affirmed, finding that whether, under Oklahoma law, the employee's actions constituted a departure wholly disconnected from employment relieving the employer from liability for negligent operation of the automobile by its advertising manager was a question of fact for the district court. *Id.* The Tenth Circuit could not say as a matter of law "that such trip was a departure wholly disconnected from the company's business which would relieve it from its liability as an employer," relying in part on the fact that Oil Daily gave its employee discretion to "exercise his own judgment in traveling, in time spent on the road, in selecting hotels or other living quarters, and when he should return to his headquarter." *Id.* at 16.

¶ 22 In the present case, the record indicates the Buffalo Run Casino was about 30 miles from Garris and Billups' hotel.[24] The men had unlimited use of the rental car, and Carolina Forge put no limitations on where Garris and Billups could drive the rental car during the business trip to Joplin. When asked if Carolina Forge gave Garris and Billups instructions not to leave Joplin, Mr. Casella answered, "No sir. We did not." [25] When asked if there were any company limitations on where they could go on this trip, Mr. Casella replied, "No. There was not—that I recall anyway." [26] When asked whether the men would have been reimbursed had they purchased gasoline in Oklahoma, Mr. Casella answered "Probably." [27]

**23.** *See also Carswell v. Okla. State University,* 1999 OK 102, ¶ 19, 995 P.2d 1118, 1123 ("Except in cases where only one reasonable conclusion can be drawn, the question of whether an employee has acted within the scope of employment at any given time is a question for the trier of fact.").

**24.** Defendant Carolina Forge Company, L.L.C.'s Motion for Summary Judgment and Brief in Support at 8.

**25.** Plaintiff's Response to Defendant Carolina Forge Company's Motion for Summary Judgment and Brief in Support, Ex. A at 15.

**26.** *Id.* Ex. A at 20.

**27.** *Id.*

¶ 23 The record also indicates the business trip for Carolina Forge was the *only* reason the men were in Joplin.[28] Mr. Casella testified that the trip to Joplin "was a business trip" to entertain customers and to participate in the golf outing.[29] Mr. Casella testified he believed there were personal portions of the trip and the trip to the casino was a personal trip.[30] However, the record indicates that while there may have been personal portions of the business trip, Carolina Forge routinely reimbursed employees for expenditures during personal portions of business trips. When asked if Carolina Forge paid for employees' expenses for meals and drinks when the employees were on *personal time*, Mr. Casella answered, "Okay. Now, I understand. Yes, we would pay for their meals and drinks. We would pay for that." [31]

¶ 24 In fact, Carolina Forge reimbursed employees for *all* expenses incurred on business trips. Both of Carolina Forge's corporate representatives testified they could not ever recall refusing to reimburse an employee for an expense documented with receipts and claimed on the employee's expense report.[32] At the time of the accident Carolina Forge had no written corporate procedure, guideline, policy, or protocol as to what expenses were and were not paid for or reimbursed by Carolina Forge.[33] According to Mr. Casella, if the men had driven to Oklahoma to purchase a meal that probably would have been okay with the company, and the company would have reimbursed it.[34] Mr. Casella also testified Carolina Forge would have paid for Garris and Billups' meals, including alcohol, *regardless* of where they ate and *regardless* of whether they were entertaining customers.[35]

¶ 25 As in *Oil Daily*, Carolina Forge gave its employees unrestricted discretion on business trips to decide how to spend their time. Carolina Forge provided blanket reimbursements for food, alcohol, and gas on past business trips regardless of whether employees were entertaining customers or were on personal time. A reasonable person could find these facts relevant in determining whether Garris and Billups' trip to the casino was authorized by Carolina Forge and whether the trip to the casino was included within the course and scope of their employment with Carolina Forge. The record does not support a determination *as a matter of law* that the men were not in the course and scope of their employment when the accident occurred. The issue is a question of fact for the jury. Summary judgment was improper.[36]

---

28. *Id.* Ex. A at 15.

29. *Id.*

30. *Id.* Ex. A at 52.

31. *Id.* Ex. A at 18–19.

32. *Id.* Ex. A at 24; Ex. B at 27.

33. *Id.* Ex. A at 22.

34. *Id.* Ex. A at 21.

35. Plaintiff's Response to Defendant Carolina Forge Company's Motion for Summary Judgment and Brief in Support, Ex. A at 42.

36. We note that Carolina Forge paid a settlement to the Estate of David Billups under its workers' compensation policy. At the hearing on summary judgment Plaintiffs' counsel argued:

> Mr. Hershewe: Okay. Now, I want to address the issues on—
> The Court: Employer/employee.
> Mr. Hershewe: Employer/employee. The biggest issue I find in there is, your Honor, is that there was a work[ers'] comp claim that was filed and was settled by Carolina Forge, and they now claim a subrogation interest in that case. And if there was not an employer/employee relationship and a settlement in that case, they are not entitled to any subrogation. Any they put us on—on—
> The Court: Put us on what?
> Mr. Hershewe: They put us on notice that they want to be repaid for the work[ers'] comp benefits that they paid in this case.
> The Court: Well, how are they going to get repaid for the benefits they paid in this case as against your clients?
> Mr. Hershewe: That's evidence because we've got a claim against Buffalo Run, your Honor.

Transcript of Motion for Summary Judgment Proceedings at 10 (Jan. 7, 2011).

Under North Carolina law, "for a claimant to recover workers' compensation benefits for death, he must prove that death resulted from an injury (1) by accident; (2) arising out of his employment; and (3) in the course of the employment." *Pickrell v. Motor Convoy, Inc.*, 322 N.C. 363, 368 S.E.2d 582 (1988).

### Plaintiffs' Request for Additional Discovery

¶ 26 The record indicates Plaintiffs requested additional discovery from Carolina Forge after the depositions of Mr. Casella and Ms. Nixon. At the time Plaintiffs' response to summary judgment was filed, Carolina Forge had not yet furnished the discovery responses. In their brief, Plaintiffs stated to the trial court: "Plaintiffs therefore respectfully request that Carolina Forge's motion be denied at this time so that Plaintiffs have the opportunity to at least obtain the discovery they have recently requested to show the existence of disputed material facts regarding both the scope of Defendants' agency, as well as the negligent entrustment and supervision claims at issue." [37]

¶ 27 Plaintiffs learned during the deposition of Defendant's corporate representatives that Garris made prior trips to Joplin, Missouri, for the same golf outing as he and Billups attended during this particular trip. Based on this newly acquired information, they sent a Request for Production to counsel for Carolina Forge requesting "business expense reports and receipts for William Garris, III for all trips he made to Joplin, Missouri prior to the trip he was on at the time of the accident." [38] Plaintiffs also learned Mr. Casella made the trip to Joplin with Garris in previous years, and as such, requested the business expense reports and receipts for Mr. Casella for all trips he made to Joplin. Plaintiffs argue in their brief to this Court that the reports and receipts for Garris and Casella for prior trips to Joplin for a similar golf outing demonstrate what constituted acceptable employee behavior on business trips and is relevant for a jury in determining whether the trip to the casino was in the course and scope of Garris and Billups' employment.

¶ 28 Additionally, Plaintiffs argue the trial court should have allowed additional discovery before granting summary judgment be-cause neither Garris nor a representative of Billups' estate had testified at the time Carolina Forge moved for summary judgment. Plaintiffs argue these depositions are relevant to determine what activities Garris and Billups believed were or were not authorized by Carolina Forge during the business trip to Joplin.

¶ 29 The trial court did not address Plaintiffs' request for more time to obtain discovery and presumably denied any such relief when it granted summary judgment to Carolina Forge. Because the trial court erred in granting summary judgment on both the respondeat superior and negligent entrustment claims, we need not determine whether the trial court abused its discretion in not allowing the Plaintiffs more time to obtain additional discovery. [39] But on remand Plaintiffs should be allowed to conduct additional discovery as they have shown such discovery is relevant to both the respondeat superior and negligent entrustment claims.

### Conclusion

¶ 30 Reasonable minds could differ on whether the employees of Carolina Forge were in the course and scope of their employment at the time of the accident and whether Carolina Forge negligently entrusted the rental vehicle to its employees. Summary judgment was improper.

**TRIAL COURT'S ORDER GRANTING SUMMARY JUDGMENT IS REVERSED; CAUSE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH TODAY'S PRONOUNCEMENT.**

¶ 31 COLBERT, C.J., REIF, V.C.J., WATT, WINCHESTER, EDMONDSON, TAYLOR, COMBS and GURICH, JJ., concur.

¶ 32 KAUGER, J., concurs in part, dissents in part.

---

37. *See* Plaintiffs' Response to Defendant Carolina Forge Company's Motion for Summary Judgment and Brief in Support at 15.

38. *Id.* at 14.

39. A trial court's refusal to allow additional discovery is reviewed for abuse of discretion. *Scott v. Peterson*, 2005 OK 84, ¶ 12, 126 P.3d 1232, 1236.

¶ 33 TAYLOR, J., concurring.

When an employer sends an employee on a business trip with cash, credit cards and rent car along with a company history of encouragement and payment for alcohol consumption, this personal injury accident is a foreseeable result and should be decided by a fact-finder.